# Commonwealth ex rel. *v.* Dickert.

*Constitutional law—Title of act—Poor law—Act of March* 16, 1866, *P. L.* 230.

The act of March 16, 1866, entitled, " A further supplement to an act entitled ' An act to authorize the erection of a poor house by the borough of Dunmore, borough of Scranton and the township of Providence in the county of Luzerne,' approved the ninth day of April, A. D. 1862," does not violate the constitutional amendment of 1864, which provides that no bill shall be passed by the legislature containing more than one subject which shall be clearly expressed in the title. The provision in section 2 of the act as to the filling of a vacancy in the office of poor director, is properly germane to the subject of the original act.

*Poor law—Poor director—Vacancy—Act of March* 16, 1866, *P. L.* 230.

Under the act of March 16, 1866, the president judge of the court of common pleas of Lackawanna county, and not the president judge of the court of common pleas of Luzerne county, has the power to fill a vacancy in the office of poor director of the Scranton poor district.

Section 2 of the act of March 16, 1866, providing for an appointment to fill any vacancy in the office of poor director " whether such vacancy occur by the expiration of the term of office, or otherwise," does not abrogate the provision for the election of poor directors by the people of the several districts for regular terms as provided by the Act of April 9, 1862, P. L. 354, and substitute an appointive for the elective system.

Under the Act of March 16, 1866, P. L. 230, where there is a vacancy in the office of poor director, the appointment is for the unexpired part of the whole term of three years, and in case of a failure to elect a poor director, a vacancy exists by reason of the expiration of the term and the appointment is for the full term.

Argued Feb. 21, 1900    Appeal, No. 23, Jan. T., 1900, by plaintiff, from judgment of C. P. Lackawanna Co., Sept. T., 1898, No. 717, on quo warranto in case of Commonwealth ex rel. John R. Jones, District Attorney of Lackawanna County, v. Frank L. Dickert. Before GREEN, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Quo warranto to determine title to office of poor director.

The facts appear by the opinion of EDWARDS, J., which was as follows:

This proceeding is instituted for the purpose of inquiring into the title of F. J. Dicker to the office of director of the poor of the Scranton poor district. The writ of quo warranto issued in the beginning against F. L. Terppe, who resigned while the action was pending. By proper procedure, under the act of assembly, Mr. Dickert was substituted as respondent, he having been appointed to fill the vacancy caused by the resignation of the commonwealth, plaintiff, and F. J. Dickert, respondent.

It appears that Mr. Terppe was appointed poor director by the president judge of our court of common pleas, for the term of three years, from the third Friday of March, 1896. The appointment was made March 23, 1896. Mr. Terppe, after serving sometime, resigned his office on December 14, 1898, and his resignation was accepted on the same day. Thus the territory formerly known as the south ward of the borough of Scranton was left without representation on the poor board. In other words, there was a vacancy. On March 2, 1899, F. J. Dickert was appointed to fill this vacancy. An examination of the legislation relating to the Scranton poor district leads us to the conclusion that the regular term of the representative from the south ward ended March 17, 1899, so that there were only fifteen days of the term remaining when Mr. Dickert was appointed. He is now holding over until his successor is duly appointed, or elected, as the law might be determined on this question. This brief statement shows the status of the case and the pleadings as they are now before us.

The legislation creating the Scranton poor district, as it is now called, and regulating its affairs, is comprised in seven different acts of assembly, or supplements. We shall only refer to two. The consideration of the others is not material in the discussion of this case. The act creating the poor district was passed April 9, 1862, P. L. 352, under the title of " An act to authorize the erection of a poor house by the borough of Dunmore, borough of Scranton and township of Providence, in the county of Luzerne." The only part of this act requiring our attention is to be found in section 3, providing for the filling of vacancies. It is in these words: " And in case of a vacancy

occurring in the board of directors of the poor of said boroughs and township, by death, resignation or otherwise, it shall be the duty of the court of quarter sessions of the county of Luzerne to appoint a suitable person to fill such vacancy for the unexpired term of the director causing the same."

A supplement was passed March 16, 1866, P. L. 230, having the following title : " A further supplement to an act entitled ' An act to authorize the erection of a poor house by the borough of Dunmore, borough of Scranton and township of Providence, in the county of Luzerne,' approved the 9th day of April, A. D. 1862." Section 2 of this supplementary act provides : " That hereafter wherever any vacancy shall occur in the board of directors, created in pursuance of the act to which this is a supplement, whether such vacancy occur by the expiration of the term of office, or otherwise, the same shall be filled by the appointment of the president judge of the court of common pleas in and for the county of Luzerne, at a regular term of said court, upon the petition of at least twenty freeholders from that portion of the district comprised within said act, in which the vacancy occurs; that all acts and parts of acts inconsistent herewith be and the same is hereby repealed."

It is clear that the supplement transfers the power to fill vacancies from the court of quarter sessions of Luzerne county to the president judge of the court of common pleas, and provides how the president judge may be moved to fill a vacancy, to wit: by petition. Does the section quoted do more than this ? What is meant by the peculiar legislative expression of a vacancy occurring " at the expiration of the term " when the organic law of the district provides for the election of poor directors by the people at regular periods? We shall endeavor to answer this question in the further discussion of the case.

The first important question raised by the relator refers to the constitutionality of the supplement of 1866. It is claimed that the supplement is unconstitutional because it violates the constitutional amendment of 1864, which provides that no bill shall be passed by the legislature containing more than one subject which shall be clearly expressed in the title. More than thirty years have elapsed since this supplement was placed upon the statute book. It came before HAND, J., for construction in 1884. Under it poor directors have been appointed

since 1866, but during all these years no attack has been made upon its constitutionality. The question is now raised for the first time. A few general principles must at all times be kept in view in considering the constitutionality of a statute. All statutes should be construed so as to sustain them rather than ignore them. One section of a statute may stand the test of judicial scrutiny while another section may fail. Contemporaneous construction of a statute and long acquiescence in the operations of its provisions will often save it from the destructive attack of the strict constructionist. But we need not rely particularly upon these general principles in this case, because we are of the opinion that the supplement of 1866 fairly meets the requirements of the constitutional amendment of 1864. The authorities sustain us in this position. In Allegheny County Home's Case, 77 Pa. 77, the following title of an act of assembly, passed in 1871, was considered sufficient: "An act providing for an equitable division of property between the county of Allegheny and the city of Pittsburg." We can do no better than repeat the language used by the court in this case : " The course of decision in this court has been intended to carry out the true intent of the amendment of 1864, as to the title and subject of bills, instead of resorting to sharp criticism, which must often bring legislation to nought. The amendment of 1864 was in substance proposed in the constitutional convention of 1837–1838, and rejected, because it was feared it would render legislation too difficult and uncertain and lead to litigation. It will not do, therefore, to impale the legislation of the state upon the sharp points of criticism, but we must give each title, as it comes before us, a reasonable interpretation, ut res magis valeat quam pereat. If the title fairly gives notice of the subject of the act so as reasonably to lead to an inquiry into the body of the bill, it is all that is necessary. It need not be an index to the contents, as has often been said. But on the other hand, it should not mislead or tend to avert inquiry into the contents, as was held in the case of the Union Passenger Railway Company, decided at Philadelphia in 1873. In view of this current of decision we cannot say that this title is too vague or is misleading. It substantially, though without particularity, described the subject of the act and its purpose."

The subject is further discussed in State Line and Juniata Railroad Company's Appeal, 77 Pa. 429. In 1870 the legislature passed "An act to incorporate the State Line and Juniata Railroad." Supplements were passed in 1871 and 1872. In this case the rule is laid down that where the legislation in the supplement is germane to the subject of the original bill, the object of such supplement is sufficiently expressed in the title. PAXSON, J., found on investigation that from 1864 to 1875 about fourteen hundred "supplements" and "further supplements" were passed by the legislature. He says: "This is important, not only as showing the extent of the interests to be affected by our decision, but also as exhibiting the uniform construction placed upon this section (amendment of 1864) by the legislative and executive departments of the government. While we are not bound by their construction, it is nevertheless entitled to weight, and should always be treated with respect. In view of this unbroken current of legislation, we are constrained so to treat this question as not to obliterate from our statute book a large number of acts under which important and costly improvements have been commenced, and rights have become vested. The construction now claimed for this clause of the constitution, if adopted by this court, would unsettle the business of the state to an extent beyond the capacity of any one to define. That we are not bound to do so is sufficiently clear both upon reason and authority."

Another authority especially applicable in the present case is that of In re Pottstown Borough, 117 Pa. 538, where the subject is fully discussed. See also to the same effect a case recently decided: Rodgers's Petition, 192 Pa. 97. As already set forth, the act of 1862 is entitled "An act to authorize the erection of a poor house by the borough of Dunmore," etc. Does not this title give such notice of the subject of the act as would reasonably lead a person interested to an inquiry into the body of the bill? What would he expect to find? It is within common reason that he would expect to find provisions for the erection of buildings, for the election or appointment of poor directors, for the filling of vacancies in the various offices and for many other matters necessary for the government and regulation of a poor house. We are clearly of the opinion that the title is sufficient, and that the supplementary act of

1866, containing a provision in section 2 as to the filling of vacancies, which provision is properly germane to the subject of the original act, is not unconstitutional.

The second question to be considered involves the right of the president judge of the court of common pleas of Lackawanna county to appoint a poor director when there is a vacancy. The act of 1862 lodged this power in the court of quarter sessions of Luzerne county. The supplement of 1866 made a change in this particular and authorized the president judge of the common pleas of Luzerne county to fill vacancies. The relator contends that the president judge of the court of Luzerne county should continue to exercise this right, if the supplementary act is constitutional, and that all appointments made by the president judge in our county are void. This contention is not well founded. A slight examination will show that the proposition is without reason to sustain it. Territory or men once made the objects of legislation, remain subject to the laws imposed, however the manner by which they are designated, may be changed: Parsons v. Winslow, 1 Grant, 160. When the supplement of 1866 was passed, Lackawanna, as now territorially constituted, was a part of Luzerne county. The subsequent formation of Lackawanna county did not operate to repeal special laws in force in Luzerne. The changing of the name of the municipality which covered the territory in the new county did not abrogate the laws applicable to this territory: Lackawanna Co. v. Stevens, 105 Pa. 465. Whatever the law said must be done by the courts or the judges of Luzerne county is bound to be done by the courts or judges of Lackawanna county, after the formation of the latter county, as to matters within its territorial limits. Any other conclusion would lead to endless confusion. Our own court, excepting the writer of this opinion, is on record on this question. It is fully discussed by GUNSTER, J., in the case of the appeal of John Gibbons et al., directors, etc., No. 523, April term, 1893. It, therefore, appears manifest to us that the president judge of Luzerne county has no power to fill a vacancy in the office of poor director of the Scranton poor district. It is well known that Judge RICE exercised the power very unwillingly and only by general consent, and with the expectation of remedial legislation relating to the poor district. He finally refused to make

any appointments. Since then the appointments have been made by the president judge of our own court, who undoubtedly has the power under the supplement of 1866 to fill all vacancies in the poor board.

The third question relates to the interpretation of the second section of the supplementary act of 1866. It provides for an appointment to fill any vacancy " whether such vacancy occur by the expiration of the term of office or otherwise." Respondent's counsel claims that this provision wipes out the provision for the election of poor directors by the people of the several districts for regular terms as provided in the original act and substitutes the appointive for the elective system. The supplement of 1866 has a repealing clause. The strongest argument in favor of this position is to be found in the case of Com. ex rel. Snover v. Stewart, 6 Law Times, N. S. 159. It is there decided that the clear intention of the legislature was to abolish the elective system and that no other meaning can be deduced from the words used. We have reached the opposite conclusion and will proceed to give our reasons therefor.

1. The original act provides for the election of poor directors. They are to be elected from certain districts and for stated terms. Numerous provisions are made for the regulation of the elections. The same act, in section 3, provides for the filling of vacancies caused by " death, resignation or otherwise." Thus, the act contains legislation, inter alia, on two distinct subjects, to wit: the election of poor directors and the filling of vacancies.

2. The subject of the second section of the supplementary act relates to the filling of vacancies only. The section has no reference whatever to the election of poor directors. It studiously avoids any mention of the word " election." If the intention was to abrogate the elective method, the legislature should have said so. A few words to that effect would have been sufficient. It could have enacted that the section providing for the election of poor directors as set forth in the act of 1862 is repealed and that hereafter the directors shall be appointed by the president judge, and then proceeded to provide for the filling of vacancies. By the very terms and words of the section, the legislation refers to only one of the subjects contained in the original act, and according to a well known rule of interpretation, all other subjects are excluded and they cannot be brought in by judicial construction,

3. A vacancy occurring "by the expiration of the term of office," when the office has been once filled and when the law provides for the election of a successor, is a curious anomaly, and can exist only under certain exceptional conditions. If the framer of the supplement intended by it to abolish the system of electing poor directors, we would characterize the attempt as a clumsy effort to secure legislation by a species of legerdemain. We cannot for a moment believe that the legislature intended any such result. It is reasonable to think that the intention was to substitute one method of filling vacancies for another. As to the meaning of the word "vacancy," we are not without some authority. The question was very learnedly and elaborately discussed in the case of Walsh v. Commonwealth, 89 Pa. 426. In that case there was no dispute as to the ordinary signification of the word as applied to an office. An office which had been once filled and became vacant on account of the death or resignation of the incumbent created a vacancy. This was a plain proposition requiring no argument to sustain it. But the Supreme Court went further and decided that the word "vacancy" "aptly and fitly describes the condition of an office when it is first created and has been filled by no incumbent." The conditions confronting the court in the Walsh case induced them to extend the legal signification of the term "vacancy" beyond the popular conception of its meaning. In the absence of peculiar conditions, the common acceptation of the use of the word must prevail. An office that has an incumbent elected for a regular term, the law providing for the election of his successor, cannot become vacant because of the expiration of the term. There may be a failure to elect at the proper time, or, the director elect may fail to qualify and a vacancy may exist for these causes, but not merely and specifically because the term has expired.

4. It is our duty now to examine more particularly the phraseology of the second section of the supplementary act of 1866. It is claimed that the purpose was to change the elective system of securing poor directors, and in this connection our attention is called to the fact that by the terms of the supplement the petition for the appointment must be signed by twenty freeholders from the proper district and the appointment must be made at a regular term of court, whereas under the

original act the filling of vacancies was not hedged in with these important formalities. This argument has no weight. The appointment of a poor director to fill a vacancy is important enough to require a petition signed by twenty freeholders, and it is entirely proper that the appointment shall be made at a regular term of court, so that the people interested in the appointment should have an opportunity to be heard. Under the act of 1862 vacancies were filled by the judges of the quarter sessions without petition at any time in open court or in vacation. The safeguards surrounding the filling of vacancies as provided in the supplement of 1866, cure the defects in the act of 1862, and are consistent with the construction we place upon the law. Regardless of the object which the framers of the supplement had in view our duty is clear. We must ascertain the meaning of the act from the act itself. When the language of an act is plain and admits of only one meaning, the task of interpretation is easy. " Where the words of a statute are plainly expressive of an intent, not rendered dubious by the contest, the interpretation must conform to and carry out that intent: " Bradbury v. Wagenhorst, 54 Pa. 182. Judges have no right to mold the language of a statute in order to carry out an unexpressed purpose or to meet an alleged convenience, nor can they alter the clear meaning of words even if the legislature may not have contemplated the consequences of using them. Looking at the words of the supplement, we find that the vacancies to be filled may occur by expiration of the term of office or otherwise. According to the original act, the vacancies would occur " by death, resignation or otherwise." The word " otherwise" in the supplement is broad enough to cover vacancies by death and resignation. It also covers vacancies by removal of the incumbent from the district and by failure of a director elect to assume the duties of his office. But how can there be a vacancy caused by the expiration of the term? We know of only one way and that is, the failure of the electors of any particular district to elect a poor director at the proper time. The term has expired. No successor has been elected. Thereupon the president judge, according to the supplementary act, appoints a director for the full term, or for the unexpired portion of it. The legislature may as well have said that a vacancy could occur by nonelection as to say it

could occur by expiration of the term. Unless we give the phrase this meaning, we would be compelled to hold that the legislature intended to abolish the elective system provided by the act of 1862, without the use of any words indicating such an intention. Such an alternative would be subversive of all rules of interpretation.

Recapitulating the conclusions we have reached, they · are briefly as follows:

1. The supplementary act of 1866 is constitutional.

2. The president judge of the court of common pleas of Lackawanna is the proper authority to fill vacancies in the poor board.

3. In case there is a vacancy the appointment is for the unexpired part of the whole term of three years, and in case of a failure to elect a poor director, a vacancy exists by reason of the expiration of the term and the appointment is for the full term.

4. The supplementary act does not change or modify the system of electing poor directors provided by the act of 1862.

5. F. J. Dickert, the respondent in this case, was appointed to fill a vacancy and is, therefore, rightfully in office until his successor is duly elected or appointed.

The foregoing naturally ends the discussion necessary for the disposition of the present case. But we cannot avoid commenting upon the complications that will surely arise in the future. It is questionable whether under present conditions it is possible to hold a valid election for a poor director in any of the districts described in the act of 1862. For thirty-three years the poor directors have been appointed and not elected. During this period the lines of election districts and wards have been changed and the integrity of the old poor districts, especially as to the machinery for holding elections for poor directors, has been destroyed to a great extent. A part of a district cannot elect a poor director. Spasmodic attempts have been made to elect a poor director from the old south ward, but as far as we can now see, although the question is not before us, there could not have been a valid election. There has not been in existence for several years for the purposes of an election a political division of territory answering to the district known as the south ward. It may be that the president judge must

continue to exercise the undesirable perogative of appointing
poor directors until new legislation relieves the situation and
brings the poor district out of its present chaotic condition.
The energies of the parties interested in the solution of this ques-
tion should be directed to the legislature and not to the courts.
We understand that there are now four vacancies in the poor
board.   These must be filled by appointments in the usual way
as the law now stands, because there have been no elections.
According to the information filed in this case, Mr. Murphy
claims to have been elected from the south ward in 1898.
While we cannot consider this question in these proceedings,
nevertheless it is manifest that there could have been no valid
election at that time, because the machinery for holding an elec-
tion in the south ward, even by combining together several of
the present wards and election precincts, was not in existence.
In addition to this the proper period for holding an election in
that district, if such an election could have been held, was in
1899.   These suggestions are made tentatively and are not to
be considered binding on parties now or hereafter interested in
poor board matters.

We enter judgment in favor of the defendant and direct the
county to pay the costs.

*Error assigned* was in entering judgment for defendant.

*I. H. Burns*, with him *John J. Murphy*, for appellant.—The
title of the act of 1866, does not clearly express the subject-
matter, is misleading, and contains two subjects: Philadelphia
v. Spring Garden, etc., Market Co., 161 Pa. 522; Mt. Joy
Borough v. Lancaster, etc., Turnpike Co., 182 Pa. 581; In re
Road in Borough of Phœnixville, 109 Pa. 44.

Even if the act of 1866 could be held to be valid there would
still be difficulty as to the proper effect of the language used
in the second section.   The vacancies the president judge has
been filling are those caused by " expiration of term."   There
is no such thing as a vacancy caused by expiration of term in
an elective office when a successor has been chosen and is ready
to assume the office.

*John F. Scragg*, for appellee.—The office is not elective: ·

Com. v. Stewart, 6 Law Times, N. S. 159; Walsh v. Com., 89 Pa. 425; United States v. Fisher, 2 Cranch, 385.

The act of 1866 is constitutional: Com. v. Stewart, 6 Law Times, N. S. 159; In re Sranton Poor District, 5 Kulp, 510; State Line etc., R. R. Co.'s App., 77 Pa. 429; In re Borough of Pottstown, 117 Pa. 538; Blood v. Mercelliott, 53 Pa. 391; Allegheny County Home's App., 77 Pa. 77; Esling's App., 89 Pa. 205; Lackawanna County v. Stevens, 105 Pa. 465; In re Scranton Poor District, 5 Kulp, 510; Rodgers's Petition, 192 Pa. 97.

PER, CURIAM, March 26, 1900:

After a very careful study of the opinion of the learned court below in this case, we are persuaded that it contains a correct solution of the somewhat anomalous problem that grows out of the facts in contention. We think the conclusion reached is sound and the reasons ·given in support of it are adequate. It is perfectly obvious however that the attention of the legislature should be called to the situation as soon as practicable, in order that they may provide a suitable enactment to solve all doubts and meet all the exigencies of the case.

Judgment affirmed.