# Commonwealth ex rel. *v.* Paine, Appellant.

*Statutes—Construction—Cotemporary interpretation.*

In cases of doubtful legislation, either because of ambiguity of expression in a single act or because of obscurity or inconsistency arising from several acts on the same subject, cotemporary interpretation is always significant as to the true meaning.

Where the public and the public authorities have construed an act of assembly in a particular way for forty years, the courts will be slow to adopt another construction.

*Public officers—Poor directors—Scranton poor district—Appointive or elective officers—Acts of April 9, 1862, P. L. 352—March 17, 1864, P. L. 19—March 16, 1866, P. L. 230, April 22, 1879, P. L. 28, and April 23, 1866, P. L. 1034.*

Under the Acts of April 9, 1862, P. L. 352, March 17, 1864, P. L. 19, March 16, 1866, P. L. 230, April 22, 1879, P. L. 28, and April 23, 1866, P L. 1034, the office of poor director of the Scranton poor district for

46      COMMONWEALTH *v.* PAINE, Appellant.

the old district of Hyde Park is appointive by the court of common pleas, and not elective by the people.

Argued Feb. 24, 1903. Appeal, No. 313, Jan. T., 1903, by defendant, from judgment of ouster, C. P. Lackawanna Co., May T., 1902, No. 402, on quo warranto in case of Commonwealth ex rel. William R. Lewis, District Attorney of Lackawanna County, v. W. A. Paine. Before DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Reversed.

Quo warranto to oust respondent from office of director of the poor. Before EDWARDS, P. J.

The case was heard upon answer, suggestion and demurrer.

The court in an opinion by EDWARDS, P. J., entered judgment of ouster.

*Error assigned* was the judgment of the court.

*John F. Scragg* and *Everett Warren,* with them *Joseph O'Brien,* for appellant.

*I. H. Burns* and *Charles E. Oliver,* for appellee.

OPINION BY MR. JUSTICE DEAN, October 12, 1903:

By special act of April 9, 1862, Dunmore and Scranton boroughs with Providence township of Luzerne county were authorized to erect a poorhouse ; four persons, two from Scranton, one from Dunmore, and one from Providence township were named as commissioners to purchase the necessary real estate and erect suitable buildings; the same persons were also appointed directors of the poor of Providence. By the the same act it was enacted that the directors should hold office until March election in 1865, at which time Providence township was to elect one person to serve as director of the township for the term of three years; the remaining three directors were to hold over until the borough election in Scranton, when each of the two wards of the borough was to elect one person to serve as director for three years; the remaining director was to hold office until the spring election of 1867, when the borough of Dunmore was to fill his place by election. By section 20 of the act it was provided that the boroughs of Hyde Park and Providence might either of them elect to become

part of the district. By act of 1864 entitled "An act to divide the borough of Scranton into two wards," a portion of the south ward was created the middle ward and authorized to elect at the next spring election and every three years thereafter one person as director of the poor of Providence. On March 16, 1866, a supplement to the act of 1862 was passed; this act provided that any vacancy which should be created by the original act, whether created by expiration of term of office or otherwise, should be filled by appointment by the judge of the court of common pleas.

Under this supplementary act the directors have ever since been appointed by the president judge of the court. The village of Hyde Park was incorporated into a borough by special act of May 4, 1852; the act provided for the first election on third Tuesday of April, and on second Tuesday of March every year thereafter. By act of April 23, 1866, the city of Scranton was incorporated, embracing the borough of Hyde Park; the borough's identity as a municipal organization was obliterated. By a supplement to this last act, April 22, 1879, the name of directors of the poor of Providence was changed to Scranton poor district, and by act of January 7, 1881, the different parts of the district were consolidated into one. On November 28, 1889, a vacancy occurred in the office of poor director and W. A. Paine, this defendant, was appointed to fill it by the president judge of Lackawanna county, which county, formed out of Luzerne, embraced the territory constituting the poor district. The appointment specifies that defendant is appointed for that part of the district formerly Hyde Park borough, for the term expiring the third Friday of March, 1902, or, until his successor be qualified. He is now filling the office under his appointment. James A. Evans, the relator, claiming that the office is elective, was voted for and elected at the February election of 1902, for a term of three years, for that part of the district which was at first the borough of Hyde Park. At his instance the district attorney had a writ of quo warranto issued to oust defendant from the office; defendant answered denying plaintiff's right and averring his own; plaintiff demurred to answer. The court below sustained the demurrer, and entered judgment of ouster against Paine. He now brings this appeal.

The first question to be decided is, whether the office of poor director of Scranton poor district under the legislation noticed is appointive or elective. If elective the judgment of the court below was right and should be affirmed; if appointive it was wrong and should be reversed.

From the date of the passage of the act of 1866, down to August, 1884, a period of about eighteen years, the office was considered by all parties as appointive. Section 2 of the act provides: " That hereafter, when any vacancy shall occur in the board of directors created in pursuance of the act to which this is a supplement, whether such vacancy occur by the expiration of the term of office or otherwise, the same shall be filled by the appointment of the president judge of the court of common pleas; " and all acts and parts of acts inconsistent therewith are repealed.

It may be assumed that reading the act of 1862, the act of 1864 dividing the borough of Scranton into wards and the act of 1866 together, the question is not free from doubt. The legislation, in view of the subject of it and the known changes in its territorial divisions and subdivisions, is fairly susceptible of more than one interpretation. But in cases of doubtful legislation, either because of ambiguity of expression in a single act or because of obscurity or inconsistency arising from several acts on the same subject, cotemporary interpretation is always significant as to the true meaning. If in the opinion of lawyers and the people interested who lived at the time and were closely affected by the legislation, it had a particular meaning ou of several possible ones, courts in later years will be slow to adopt another, even though they might not on a perusal of the acts be inclined to concur in the cotemporary interpretation. As we have noticed, for almost eighteen years everybody deemed and treated the office as appointive; then the question was first raised before Judge Alfred Hand of the common pleas of Lackawanna county. Writs of quo warranto were issued against five of the directors, and he rendered an opinion in but one, as the same question was raised in all. The opinion was rendered in Commonwealth ex rel. Snover v. Stewart reported in 6 Law Times (N. S.), 159. The whole question of interpretation of the acts of 1862, 1864, 1866 and 1879 is most thoroughly and carefully considered. As to what

the question was he says : " The suggestion alleges that the relator was duly elected. The respondent practically excepts that the office is not elective. On this exception we dispose of the case on its merits as they appear, 1st, from the letter and construction of the several acts of assembly, and 2d, on such facts as we may take judicial notice of." He then proceeds to a most elaborate consideration of the subject, in the course of which he thus speaks : " Since the passage of this act no director has entered upon his office by virtue of a popular election, but all have served, during a period of twenty-two years, by appointment. The appointments by the judges of the courts, the petitions of freeholders, the acquiescence of the people, the obliteration of the election districts and polling places which do not exist for this purpose, all show that the act of 1866, was universally understood to do away with the election of directors." Then, this is his conclusion or judgment on the whole case : " We can discover nothing in the constitution which prohibits the legislature from restoring by a properly drawn act of assembly the choice of these directors to the suffrage of the people, but they must do it. The present officers of the board hold their positions by warrant of law. The relators in these cases set up a popular election and not an appointment by the president judge of the common pleas of Luzerne county. They are in no position to contest the right of this respondent or the other respondents named to their office."

Exceptions were taken by the relators to the opinion and judgment in all five cases, but no appeal was taken to this court. So the matter rested ; all parties seemed to be content with this adjudication of the law ; the office continued to be filled by appointment for about twelve years longer, when in 1898, a writ of quo warranto was issued at the suggestion of the district attorney against F. L. Terppe, who had been appointed, but he having resigned pending proceedings, his successor, F. L. Dickert, also appointed, was substituted respondent of record. The case is reported in 195 Pa. 234, Commonwealth ex rel. v. Dickert. The report of the case does not show the pleadings and we gather the question at issue from the opinion of the court below.

The learned judge of that court flatly disagreed with Judge

Hand, in holding that under the act of 1866 and the act of 1862 to which it is a supplement, the office is elective except as to vacancies that might occur by " death, resignation or otherwise" during a term ; that Terppe having resigned, there was a vacancy to which Dickert was appointed by the president judge of Lackawanna, therefore, notwithstanding the office was elective, Dickert was lawfully appointed under the act of 1866 to fill the vacancy. He announces five conclusions ; 1. The supplementary act of 1866 is constitutional. 2. The president judge of the court of common pleas of Lackawanna county is the proper authority to fill vacancies in the poor board. 5. F. J. Dickert, the respondent in this case, was appointed to fill a vacancy and is therefore rightfully in office until his successor is duly elected or appointed.

It is very obvious that these three conclusions were decisive of the issue between the commonwealth and respondent. The court in substance says, he ought not to be ousted because he was lawfully appointed and was lawfully in possession of the office ; but then it goes further and says that under an entirely different state of facts, it would have been the duty of the court to oust him. As that was not a question raised by the issue it was therefore immaterial ; consequently the interjected third and fourth conclusions which are to the effect that the supplement did not change the elective provisions of the act of 1862, were dicta ; not perhaps obiter dicta, that is made, " by the way " and without argument or consideration, but judicial dicta made as argument or illustration, as pertinent to other cases, as to the one on hand and which may enlighten or convince but which in no sense, are a part of the judgment in the particular issue, not binding as a precedent, but entitled to receive the respect due to the opinion of the judge who utters them.

That case settled conclusively that Dickert was entitled to the office, because he was lawfully appointed, not that some other director might not be entitled to the office because not elected. Thus far the judgment was res adjudicata but no further ; it did not determine the law or the facts in this issue and could not, for by the opinion itself, they were not involved.

The suggestions in the opinion, to the legislature, that further supplementary legislation is needed are for the consid-

eration of that body.   This court in a per curiam  opinion of a dozen  lines affirmed the judgment and specially approved the recommendation to the legislature.   We did not approve nor intend to approve any adjudication of an issue not raised in the court below and not before us ; we are, therefore entirely free to decide this issue between  wholly  different  parties, and on  a different state of facts, and which is necessarily ruled by a view of the law that had not application  to the issue made up  in Commonwealth v. Dickert, supra.

We do not concur  in the strictures  upon the legislature for placing the power of appointment of poor  directors in the court instead of making them elective as other county and district officers.   We have no doubt that when the act of 1866 was passed it was in entire accord  with the wishes of the people living in the territory affected.   Their submission for nearly forty years indicates their approval.   It is part of the old  special legislation which a bill of a few lines would repeal and which doubtless would be repealed, if the people  interested, with approximate unanimity, asked for such legislative action.

It seems  to us  the learned judge  of  the  court below was too strongly  influenced in his interpretation  of  the legislation  by the difficulties and embarassments  incident  to the change in the divisions of the old districts  since 1866.   This may  be  a  good reason  for  legislative action, but it clearly is not sufficient to  warrant a strained interpretation of the act, an interpretation which in effect disregards its plain words and restores the elective provisions of the act of 1862 which it plainly repealed.   That interpretation destroys a later live statute and puts life in an older dead one, something beyond judicial power.

Without any hesitation we concur in the opinion in commonwealth ex rel. Snover  v. Stewart, supra, and think that defendant Paine  was lawfully  appointed and is entitled to the office. We think the parties in the last twenty years have got as much litigation  out of  this act of 1862 and its supplements as they will reasonably  bear  and again  suggest  that they  transfer their field of effort to the legislature  where the result will probably be more satisfactory.

The judgment of ouster is reversed and the writ of quo warranto dismissed.