STATE OF IOWA ex rel. WILLIAM A. COOK et al., Appellants, v. WILLIS N. BIRDSALL, Appellee.

**ELECTIONS:** Non-Prejudicial Irregularities. Non-fraudulent irregularities will not invalidate an election, when it affirmatively appears that the final result was in no manner affected thereby. So held where, in a joint election of electors within and without a city, those outside, to the extent of 400 electors, were inadvertently overlooked, but the proposition was carried by a majority of over 1,300.

**OFFICERS:** Vacancies in Office of Municipal Judge. No vacancy
2  can exist in the office of judge of the municipal court until the
court is *fully created* (a) by the due adoption of the plan by
the electors, and (b) by the election of a municipal judge-"at
the next regular municipal election" following such adoption,
as provided by Section 694-c3, Code Supplemental Supplement,
1915.

*Appeal from Black Hawk District Court.*—H. B. Boies,
Judge.

NOVEMBER 22, 1918.

REHEARING DENIED MAY 14, 1919.

Quo warranto proceeding to test the legality of the
appointment of the defendant as judge of the municipal
court of the city of Waterloo. The district court dismissed
the proceeding, and the plaintiffs appeal.—*Reversed and re-
manded.*

*Freely & Cook,* for appellants.

*Edwards, Longley, Ransier & Smith, Pickett, Swisher &*

*Farwell, J. W. Arbuckle, Williams & Clark,* and *Paulsen &
Wood,* for appellee.

EVANS, J.—The plaintiffs, as relators, are justices of
the peace in the townships of Waterloo and East Waterloo,
respectively. At the city election held on March 25, 1918,
a resolution was adopted by a vote of the
1. ELECTIONS:        electors for the establishment of a munici-
non-prejudicial
irregularities.      pal court, pursuant to the provisions of
Chapter 106 of the Acts of the Thirty-sixth
General Assembly. Thereafter, and prior to May 1, 1918,
the defendant was appointed as judge of said municipal
court by the governor of the state. Pursuant to such ap-
pointment, the defendant entered into the possession of the
office, and assumed to exercise its functions. In the mak-

ing of such appointment and in the acceptance thereof by the defendant, it was assumed that there was a vacancy in the office, and that the duty devolved upon the governor of the state to fill such vacancy by appointment. The legality of the appointment is challenged by the relators, on the grounds:

(1) That the election of March 25, 1918, was illegally conducted, in that no provision was made for receiving or counting the vote of the electors in the townships of Waterloo and East Waterloo residing outside of the corporate boundaries.

(2) That there was no vacancy to which an appointment could be made.

I. Chapter 106 of the Acts of the Thirty-sixth General Assembly appears in the 1915 Supplemental Supplement to the Code as Sections 694-c1 to 694-c51, inclusive. We shall, therefore, in our discussion refer to the sections as numbered in the Supplemental Supplement. Section 694-c1 confers power upon cities of a certain class to establish municipal courts, and provides that, for the purpose of the act, "the territorial limits of any such city shall be held to extend to the limits and include therein all civil townships in which said city or any part thereof is located."

The charge of illegality of the election is predicated upon the fact that, in the conducting of the city election, that part of Section 694-c1 hereinabove quoted was ignored, and that no account was taken of the voters residing outside of the corporate limits and within civil townships in which the city was, in part, located; and that no provision was made for the taking of such outside vote, and the same was, therefore, neither counted nor cast. It is made to appear by stipulation that the number of votes in this outside territory thus ignored was less than 400, and that the majority at the election was in excess

of 1,300. The result, therefore, was not affected by the irregularity. The popular will was clearly ascertained, notwithstanding this irregularity. There is no claim that any fraud was perpetrated or intended, or that there was any lack of fairness and honesty in the conducting of the election, except so far as this necessarily resulted from the omission of the votes in question. We have held that, in the absence of fraud, a mere irregularity in the conducting of an election will not invalidate it, where it appears that the result of the election was not affected thereby. *Younker v. Susong,* 173 Iowa 663; *Dishon v. Smith,* 10 Iowa 212. This is the holding, also, in many other jurisdictions. The charge of illegality in the conduct of the election, therefore, cannot be sustained.

II. Was there a vacancy? This ground of challenge rests upon two legs:

(1) That the creation of the office did not create a preliminary vacancy, within the meaning of

2. OFFICERS: vacancies in office of municipal judge.

the law; and

(2) That, at the time of the appointment of the defendant as municipal judge, the municipal court had not been created, but was in process of creation only.

Our consideration of this ground of challenge must be guided by the legislative intent, as expressed in the legislation. The determining question is not whether the creation of the office created a preliminary vacancy until an incumbent should either be appointed or elected. If it could be said that the adoption of the resolution by the voters was the only prerequisite to the establishment and to the completed creation of a municipal court for the city of Waterloo, then there would be room for the contention that the office of municipal judge was vacant. If vacant, the power of appointment rested with the governor of the state, under Section 10, Article 4, of the Constitu-

tion. The question thus stated has affirmative support in the following authorities: *State v. McMillan*, 108 Mo. 153; *Gormley v. Taylor*, 44 Ga. 76; *State v. Askew*, 48 Ark. 82; *Driskill v. State*, 7 Ind. 338; *Rice v. State*, 7 Ind. 332; *Stocking v. State*, 7 Ind. 326; *Walsh v. Commonwealth*, 89 Pa. 419, 426; *People v. Hylan*, 212 N. Y. 236 (106 N. E. 89); *In re Collins*, 16 Misc. Rep. 598 (40 N. Y. Supp. 517, 519); *Yates v. McDonald*, 123 Ky. 596 (96 S. W. 865); *State v. Mayor of Butte*, 41 Mont. 377 (109 Pac. 710); *Knight v. Trigg*, 16 Idaho 256 (100 Pac. 1060); *In re Fourth Judicial District*, 4 Wyo. 133 (32 Pac. 850).

To the contrary are the following authorities: *State v. Messmore*, 14 Wis. 115; *Commonwealth v. Dickert*, 195 Pa. 234 (45 Atl. 1058); *People v. Opel*, 188 Ill. 194; *Rosborough v. Broadman*, 67 Cal. 116 (7 Pac. 261); *Conely v. Common Council of Detroit*, 93 Mich. 446; *Campau v. Common Council*, 53 N. W. 564; *State v. Hedlund*, 16 Neb. 566 (20 N. W. 876).

It goes without saying that, unless there was an existing office to be filled, there could be no vacancy. As we view the statute, the determinative question is, What were the prerequisites to the creation of the municipal court of the city of Waterloo? In other words, when, in the sequence of events, did such court come into full being?

In each case which we have above set forth in support of the proposition that the creation of an office creates a temporary vacancy in its incumbency, which may be filled by appointment of the governor, the office under consideration was created by act of the legislature. Its creation was complete, and subject to no contingency. There was presented, therefore, an office complete in its creation, but vacant in its incumbency. In the case at bar, such is not the situation confronting us. The legislature did not create a municipal court for the city of Waterloo. It did enact legislation whereby cities of such class could create mu-

nicipal courts, by complying with certain prerequisites. Manifestly, the court could not be deemed in being until such prequisites were complied with. These prerequisites are set forth in Section 694-c3, which is as follows:

"At such election the proposition to be submitted shall be, 'Shall the proposition to establish a municipal court in the city of (name of city) under Chapter (naming chapter containing this act) of the Acts of the Thirty-Sixth General Assembly be adopted?' The election shall be conducted, the vote' canvassed, and the result declared in the same manner as provided by law, in respect to other municipal elections. If the majority of the vote cast on said proposition shall be in favor thereof, said municipal court shall be established. Immediately after such proposition is adopted, the mayor shall transmit to the governor, the secretary of state and the county auditor, each, a certificate showing that such proposition was adopted. At the next regular municipal election after the adoption of such proposition there shall be elected the judge or judges of said municipal court and the clerk and bailiff thereof as hereinafter provided."

It is the contention of the relators that this section specifies two prerequisites:

(1) That the resolution shall be adopted.

(2) That officers of such court shall be elected at the next regular municipal election.

The contention of the defendant is that the election of officers is not a prerequisite to the creation of the court. Emphasis is put upon that part of the section which provides that, if a majority of the votes shall be in favor thereof, "said municipal court shall be established." It is claimed, in substance, that this is the equivalent of saying that the court "shall be deemed established;" whereas the relators contend that this provision is only a mandate, obligatory upon all who have to do with the final prerequisite.

In ascertaining the real intent of the legislature at this point, we must look into the enactment as a whole. Under Section 694-c18, the nature of the jurisdiction of the municipal court is set forth. It is indicated there that the purpose of the creation of such a court is to supplant and to be successor to the superior court, the police court, the mayor's court, and the justice court of the creating city. The creation of the new court abolishes the old. The respective jurisdictions of the old and their official records are conferred *en masse* upon the new.

Section 694-c5 provides:

"That after the adoption of the proposition to establish a municipal court under the provisions of this act, and upon the election and qualification of the officers herein provided for, the police court, mayor's court, justice of the peace court and the superior court in and for the territory within the municipal court district, shall be abolished and the offices of police judge, clerk of police court, justices of the peace, constables, superior judge and clerk of superior court shall likewise be abolished; and when said offices shall be abolished the dockets of such courts and all records and papers in their possession pertaining to any proceedings had before them shall be forthwith delivered to the clerk of the municipal court, who shall preserve same in his office and who shall have full power and authority to certify and transcript such proceedings, as appear in the said dockets and records and papers of the said courts, and all subsequent proceedings in any cause of action then pending in any of the said courts so abolished, shall be carried out in the said municipal court in the manner herein provided for, the same as if the said cause had originated in said municipal court."

The foregoing section sheds light upon the intent of the legislature as to the process of creation of the court. It appears clearly therefrom that the old courts which

were to be superseded were to maintain their existence
and their functions until after the election of the officers
of the new court as provided for in Section 694-c3.   This
was a lease of life to the old courts until the "next regular
municipal election."   There is nothing in the enactment
anywhere indicating an intent to confer upon the new court
a jurisdiction concurrent with the old courts at any time.
The very purpose of the organization of the new court was
to supersede the old.   If, for instance, the statute had re-
quired that judges be elected within 30 days after the
adoption of the resolution by the voters, it would hardly
be claimed that such election of judges did not constitute
a part of the process of creation of the court.   Nor would
it be claimed that a vacancy existed which might be filled
by appointment during such 30-day period.   The brevity of
the time would aid the plausibility of the argument that
the election of judges was a prerequisite to the completed
creation of the court, in a concrete sense.   In the case at
bar, the length of time between the time of the vote of
adoption of the resolution and. the "next regular municipal
election" seems very long, and this gives a plausibility to
the contrary argument.   But if our position is sound upon
the first hypothesis of a brief intervening period, it is no
less so because of an intervening period which seems un-
reasonably long.   This long intervening period may be ex-
plained by a legislative desire to give the incumbents of
the superseded courts a reasonable time of warning of
their demise.   We reach the conclusion that the municipal
court of Waterloo cannot be deemed to exist in a complete
sense until the election of its officers at the "next regular
municipal election;"   and that it was the legislative intent
that the election of such officers at such election should be
a part of its process of creation, and should complete its
creation, in a concrete sense.   While the functions of life
are saved to the old courts, they are withheld from the

new. When the old courts cease, the new begins its functions. Until such time, there can be no vacancy in the office of municipal judge. This conclusion is emphasized by Section 694-c16, which provides as follows:

"If any vacancy occurs in the office of municipal judge, the governor of the state of Iowa shall appoint such officer to fill such vacancy who shall hold the office until the next regular city election," etc.

This is the only provision of the enactment pertaining to the filling of vacancies. It clearly contemplates a vacancy as a possible contingency; whereas, under the contention of the defendant, a preliminary vacancy would always be a certainty. It follows from these conclusions that the relators are entitled to exercise the functions of their office until after the election of the judges at the next regular municipal election. It follows, likewise, that the defendant is not entitled to exercise the functions of municipal judge, and that there can be no vacancy in the office of municipal judge until after the completed creation of the municipal court. The judgment below is, therefore, reversed and the cause remanded.—*Reversed and remanded.*

PRESTON, C. J., LADD and SALINGER, JJ., concur.