## McCune, Appellant, *v.* Berry.

*Bridges—County bridges—Reconstruction—Bridge companies— Acts of May 6, 1897, P. L. 46; May 13, 1901, P. L. 191, and April 25, 1907, P. L. 119—Constitutional law.*

1. Where a bridge crossing a navigable river which is the dividing line between two counties has been abandoned and destroyed by the bridge company which owned it in compliance with an order of the Secretary of War, proceedings to construct a new bridge in substitution of the old one by the two counties interested must be under the Act of May 6, 1897, P. L. 46, as amended by the Acts of May 13, 1901, P. L. 191, and April 25, 1907, P. L. 119.

2. The word "otherwise" in the Act of May 6, 1897, P. L. 46, does not mean some casualty ejusdem generis with ice and flood,

but means some other greater power that is as effective in destroying the bridge as an extraordinary flood of water and ice would be.

3. If a county bridge has been abandoned by a bridge company in obedience to an order of the Secretary of War, and the United States Government requires the elevation of the bridge to be such as to require more extended approaches, the commissioners, may if the public necessities require, rebuild the bridge on the old site, and take additional ground for an approach on a borough street; and the consequent injury caused thereby to private property does not make their action in building the bridge illegal.

4. The Act of May 6, 1897, P. L. 46, as amended is not unconstitutional.

Argued Oct. 17, 1912. Appeal, No. 222, Oct. T., 1912, by plaintiffs, from decree of C. P. Washington Co., Equity Docket, No. 2068, dismissing bill in equity in case of Thomas A. McCune, et al., Taxpayers of Washington County v. John A. Berry, et al., Commissioners of Washington County. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Bill in equity to restrain the construction of a bridge across the Monongahela river.

McILVAINE, P. J., filed the following opinion:

The court in this case, from the testimony, pleadings, admissions made at the trial and from facts judicially within its own knowledge, ascertained in litigation upon the same subject matter, find the facts to be as set out under the sub-heads "Direct Findings of Fact" and "Collateral Findings of Fact."

#### I.   DIRECT FINDINGS OF FACT.

Under this head we have adopted the findings of fact which the plaintiffs requested us to make, which are as follows:

1. The former bridge over the Monongahela river between West Brownsville, in Washington County, and South Brownsville, in Fayette County, erected by the

bridge company chartered under the Act of March 16, 1830, P. L. 102, was by said bridge company maintained and operated as a toll bridge, under its charter franchise until the fall of the year 1910, at which time said bridge company closed it to travel, and thereafter said company caused said bridge to be torn down and removed. The said bridge has not been rebuilt or replaced, either by the bridge company or by any one else, upon another site.

2. From the Fayette County terminus of said former bridge, a street of the Borough of South Brownsville, known as Bridge street, fifty feet wide, runs eastwardly to a connection with a street running in the same general direction as the Monongahela river, called High street. Between High street and said former bridge terminus, and near to the latter, Bridge street intersects another street, substantially parallel at this point with the river, known as Water street.

3. The defendants intend, in conjunction with the County Commissioners of Fayette County, to build a new bridge across the aforesaid river, at the point where it was crossed by the said former bridge and to carry the structure, so to be built, beyond what was the South Brownsville terminus of said former bridge, by means of a viaduct built upon and along Bridge street, in the borough of South Brownsville, for a distance of about 340 feet to a point about 15 feet west of the property line of High street, and to pay out of the treasury of Washington county a share of the cost thereof to be fixed by the proportion that the population of said county bears to that of Fayette County.

4. The said viaduct is designed to be 36 feet in width, in all, and will occupy the entire width of the cartway of Bridge street. The surface of the roadway to be carried by said viaduct will be more than 20 feet above the present level of Bridge street at its western end, and at its intersection with Water street, but will meet the present surface of High street at the aforesaid point, fifteen feet west of High street.

5. The result of the construction of said viaduct will be to absolutely prevent teams and vehicles coming along Water street from turning into and traveling along Bridge street in order to reach High street, as they may now do, and vice versa.

6. There are valuable private properties located on either side of Bridge street, and the result of building said proposed viaduct upon said street will be that the owners of such properties will be entitled to substantial damages for injuries thereby caused to their properties. The defendants intend to pay, out of the treasury of Washington County, when such damages are assessed and ascertained, a share thereof proportioned to the relative population of said county.

## II.   COLLATERAL FINDINGS OF FACT.

1. Nearly a century ago the national government constructed a turnpike road from Cumberland to the West, crossing the Monongahela river at Brownsville and the Ohio river at. Wheeling. Some years ago this road within its boundaries, by Act of Congress, was turned over to the care of the State of Pennsylvania, and was, at the time of the filing of this bill, under the supervision of the Commissioner of Highways of this State, and is perhaps the most traveled of any highway in the counties of Fayette and Washington.

2. At the point where this road crosses the Monongahela river two towns are located, one on the east bank of the river in Fayette County known generally as Brownsville, although composed of different sections known as Bridgeport, South Brownsville and Brownsville proper; on the west bank of the river in Washington County is located the town of West Brownsville and its suburbs. These towns, each having a large population, extend up and down the river opposite each other for considerable distance, perhaps a mile or more.

3. For a long number of years the only way that the citizens of West Brownsville, in Washington County, crossed the river to Brownsville, in Fayette County, was over a bridge across the river on the line of this National turnpike, and which was used to connect the termination of the National pike on the east bank of the river with the termination of the National pike on the west bank of the river. After this bridge was destroyed, as hereinafter found, the citizens of Washington County and the citizens of Fayette County have had no way of crossing the river between these two towns except by a ferry operated by a company incorporated for that purpose at a point near the site of the bridge. This bridge was erected by a corporation chartered under an Act of Assembly approved March 16, 1830, P. L. 102, in the year 1836, and it operated said bridge from the time of its construction up until the fall of 1910, charging toll for all who passed over it, as was permitted by its charter.

4. The Monongahela river is a navigable stream over which the United States Government has control for the purposes of navigation, and some time prior to 1910 the Secretary of War, under authority given him by an Act of Congress, declared this bridge to be an unreasonable obstruction of navigation upon said river and ordered that the said bridge be raised and remodeled so as not to obstruct navigation, requiring the length of the channel span to be 390 feet and its elevation so as to give a clearance of 52 feet above the level of the water of the fourth pool of the Monongahela river, and in default of such remodeling ordered the bridge to be torn down.

5. The company decided that they would not remodel the bridge as required by the United States Government, but accepted the alternative and tore it down in September, 1910. Since that the ferry has been used by those who wish to cross the river.

6. There being a universal demand by the citizens both of Washington and Fayette Counties for a free bridge across the river between these two towns, proceedings were started in both counties having in view the erection of a free bridge by the two counties. The proceeding in both counties was started under the Act of June 13, 1836, P. L. 551, as amended by the Act of April 23, 1903, P. L. 289, which required the Court of Quarter Sessions of each of the counties, upon proper petitions being presented, to appoint three viewers from each county, and these six viewers to act jointly and report to the Court of Quarter Sessions of the two counties. Viewers were appointed and acted and reported in favor of a free bridge over the Monongahela river, and they designated as the site for the new bridge the site of the old bridge. The bridge company at that time had previously abandoned that site and conveyed away their title to the land they owned at the approaches of their bridge on either side of the river. The report of viewers was by the Court of Quarter Sessions of both counties laid before the next grand jury of the respective counties and by said grand juries approved. This approval was reported to the courts, and by them respectively approved nisi. The bridge company before the approval of the court became absolute, filed exceptions to the report of the viewers, and these exceptions were argued before the two judges of Fayette County and the two judges of Washington County by agreement sitting together to hear the argument, and after argument and joint consideration of the facts and arguments, the courts of each of the counties filed opinions sustaining the exceptions of the bridge company. The thirteenth exception was in these words: "That the Act of May 6, 1897, as amended by the Act of May 13, 1901, and as further amended by the Act of April 25, 1907, is the only method by which a bridge can be constructed by the counties of Washington and Fayette

at the site of the proposed bridge as recommended by tho viewers." The decree of this court filed July 17, 1911, is in these words: "And now, July 17, 1911, the exceptions herein filed to the report of viewers came on to be heard and were argued by counsel before UMBEL, P. J., and VAN SWEARINGEN, J., of the Court of Quarter Sessions of Fayette County, and McILVAINE, P. J., and TAYLOR, J., of the Court of Quarter Sessions of Washington County, sitting jointly; whereupon, upon due consideration, it is ordered, adjudged and decreed by this court that exception 13 herein filed be and the same is sustained, and the report of viewers under the Act of 1836 is set aside, and it is recommended that the county commissioners of the two counties proceed to rebuild the bridge in question under the Act of May 6, 1897, as amended by the Act of May 13, 1901, as further amended by the Act of April 25, 1907, as set out in opinion of VAN SWEARINGEN, J., herein filed in Fayette County Court of Quarter Sessions, to No. 2, September Term, 1910, Road Docket, in that county."

7. To No. 1076, February Term, 1912, in the Court of Common Pleas of Washington County, a mandamus proceeding was started by a number of citizens of Washington County against the present defendants and an alternative writ of mandamus was issued against them, directing them in conjunction with the commissioners of Fayette County to proceed to erect a bridge on the site of the old bridge and to take its place, complying with the requirements of the Act of Congress. That mandamus proceeding was proceeded in and a peremptory mandamus before the filing of this bill was issued against the commissioners, and like proceedings were had with like results in Fayette County, and in pursuance to a joint action taken by the two boards they resolved to proceed to erect a bridge on the site of the old bridge, as set forth in the direct findings of fact.

8. Opposition to the location of the bridge on the old site was first manifested at the time the viewers had the matter under consideration, and when the mandamus proceeding in this county was started a number of citizens who opposed (not the bridge but the building of it on that location) asked to intervene as defendants, and this court held that they had no right. After the court so held the plaintiffs who are also opposed to the building of the bridge on this location but desire the county commissioners to build a free joint bridge at another location more convenient for them, filed the bill in this proceeding.

### CONCLUSIONS OF LAW.

The conclusions of law upon the facts found in this case are given under the two heads, "Affirmative Conclusions of Law" and "Negative Conclusions of Law."

#### I. AFFIRMATIVE CONCLUSIONS OF LAW.

1. The only method by which a bridge can be built on the old site owned by the bridge company by the joint action of the two counties is by the commissioners proceeding under the Act of May 6, 1897, P. L. 46, as amended by the Act of May 13, 1901, P. L. 191, as further amended by the Act of April 25, 1907, P. L. 119.

2. The plaintiffs on the facts found are not entitled to an injunction against the defendants restraining them from joining in the building of the bridge proposed by them to be built, as set forth in their bill, nor are they entitled to an injunction restraining them from paying or causing to be paid out of the county treasury of the County of Washington any part of the cost and expenses of building such bridge or any part of the damages caused to private property by the building thereof.

#### II. NEGATIVE CONCLUSIONS OF LAW.

1. The word "otherwise" in the Act of May 6, 1897, does not mean some casualty ejusdem generis with ice

and flood, but means some other greater power that is as effective in destroying the bridge as an extraordinary flood of water and ice would be.

2: It does not follow because the bridge company has not rebuilt their bridge on some other location, that therefore the bridge about to be built by the defendants is not within the description of bridges which the Act of 1897 as amended authorizes the county commissioners to take charge of and rebuild. It is sufficient if it appears that they have abandoned the reconstruction of their bridge and that the traveling public are to be deprived of a bridge at that point and such a bridge is necessary.

3. If the county commissioners have a right to reconstruct this bridge because it has been destroyed by some greater force such as would be equal to the force of an extraordinary ice or flood, and the United States Government requires the elevation of the bridge to be such as to require more extended approaches, then the act of the commissioners in taking the additional ground for an approach on Bridge street and the consequent injury caused thereby to private property, does not make their action in building the bridge illegal.

4. The Act of May 6, 1897, P. L. 46, as amended by the subsequent act, is not unconstitutional.

*Error assigned* was decree dismissing the bill.

*James I. Brownson,* of *Donnans, Brownson & Miller,* with him *A. G. Braden,* of *Braden and Campbell,* for appellants.—The act of assembly does not apply to the bridge in question, because it does not come within the description of bridges which the statute authorizes county commissioners to rebuild.

The "destruction" referred to is a destruction by the action of the elements, and not a taking down by the

act of the owner: Seabolt v. Northumberland County
Commissioners, 187 Pa. 318.

But if the act applies at all, it does not authorize the
county commissioners to do all that they propose to do.

A public street is a public franchise. and cannot be
violated except by direct legislative grant: Common-
wealth v. Erie and North East Railroad Company, 27
Pa. 339; Cake v. Philadelphia and Erie Railroad Com-
pany, 87 Pa. 307; Penna. R. R. Co.'s App., 93 Pa. 150.

The powers specified in the act have not been consti-
tutionally granted: Com. v. Attorney General, 13 Pa.
D. R. 521; Lewisburg Bridge Co. v. Union & Northum-
berland Counties, 232 Pa. 255; Bennett v. Sullivan
County, 29 Pa. Superior Ct. 120; Shear v. Potter
County, 9 Pa. D. R. 289; Teeple v. Wayne County Com-
missioners, 9 Pa. D. R. 412; McLaughlin v. Summit Hill
Boro., 224 Pa. 425.


*R. W. Irwin,* with him *I. W. Baum, E. H. Reppert* and
*Jas. A. Wiley,* for appellees.—The Act of May 6, 1897,
P. L. 46, and its supplements applies to the bridge in
question: Seabolt v. Northumberland County Commis-
sioners, 187 Pa. 318.

The grant of a power to build a bridge necessarily im-
plies the right to build an approach or approaches to
the bridge: Catawissa & Main Twp. Road, 17 Pa. Su-
perior Ct. 21; Penn Twp. v. Perry County, 78 Pa. 457.

The Act of May 6, 1897, P. L. 46, is constitutional:
Towanda Bridge Co.'s Case, 91 Pa. 216; Montgomery
County v. Bridge Co., 110 Pa. 54; Clarion Turnpike &
Bridge Co. v. Clarion County, 172 Pa. 243.

It has been repeatedly decided by this court that a
franchise is property, and that the grant of a right to
take property for public use will be held to include the
right to take a corporate franchise wherever the taking
of the franchise is essential to the enjoyment of the
grant: Penna. R. R. Co.'s App., 93 Pa. 150; Pittsburgh

Junction R. R. Co.'s App., 122 Pa. 511; Pittsburgh
Junction R. R. Co. v. Allegheny Valley R. R. Co., 146
Pa. 297; Penna. Schuylkill Valley R. R. Co. v. Schuyl-
kill Navigation Co., 167 Pa. 576.

PER CURIAM, October 21, 1912:

The decree is affirmed at the cost of the appellant on
the findings of fact and conclusions of law by the
learned president judge of the Common Pleas.