## Camden Safe Deposit & Trust Co., Trustee, v. Eavenson et al.

*Realty—Possession—Purchaser at sheriff's sale—Lease—Construction—Conveyance to tenant—Merger—Statute of frauds.*

1. One who holds title through purchase at sheriff's sale under foreclosure proceedings is entitled to possession as against a tenant of the property under a lease which provides that the latter took possession as sub-tenant and subject to all the terms and conditions of an original lease, wherein the tenant agreed to give possession in case the lease should terminate by "expiration, forfeiture or otherwise," and there was a merger of the title and leasehold by conveyance of the premises to the original tenant.

2. The word "otherwise" will be construed to cover termination of the lease by merger.

3. Evidence of a contemporaneous oral agreement contradicting the terms of the lease, whereby the tenant claimed to be entitled to continued possession, is not admissible under the statute of frauds, nor would continued possession under such oral agreement create a new term superior to the rights of the mortgagee.

Petition for possession of property purchased at sheriff's sale under the Act of April 20, 1905, P. L. 239. C. P. No. 5, Phila. Co., March T., 1927, No. 4491.

*Lester B. Johnson* (with him *George Wharton Pepper*, for Philadelphia Company for Guaranteeing Mortgages, Trustee), for petitioners.

*Wolf, Block, Schorr*, etc., and *Owen J. Roberts*, for respondents.

ALESSANDRONI, J., July 9, 1928.—William R. Stanert, on Oct. 13, 1927, filed his petition for citation, directed to Eugene Jacobs, Jennie M. Stern and Guilford-Bacharach Company, to show cause, if any, why the possession of certain premises situate at the northeast corner of Broad and Girard Avenue, Philadelphia, should not be delivered to him. William R. Stanert acquired title by deed from Harry Vliet, who in turn took title from the Sheriff of Philadelphia County, who sold by virtue of foreclosure proceedings on a mortgage held by the Camden Safe Deposit and Trust Company, trustee. The petition sets forth that the respondent, Eugene Jacobs, came into possession of the premises aforesaid by virtue of a lease from Jennie M. Stern to Guilford-Bacharach Company, which said lease has since been assumed by the said Eugene Jacobs. That at the time of the execution of the said lease, Jennie M. Stern was lessee of the aforesaid premises by virtue of a lease dated May 24, 1920, from Mastbaum Brothers & Fleisher, agents for Arthur W. Pusey; said lease being for a term of twenty years from Jan. 1, 1921.

At the time of the execution of the said lease to Jennie M. Stern, Arthur W. Pusey was in possession of said premises under a certain lease dated May 22, 1920, from Mastbaum Brothers & Fleisher, agents for George H. Earle, Jr., who was then the owner of the said premises. This lease gave the lessor the option to sell the demised premises to the lessee at the expiration of five years from Jan. 1, 1921, for a fixed sum, and in another paragraph thereof gave an option to the lessee to purchase the demised premises from the lessor at the expiration of ten years from Jan. 1, 1921, under substantially the same terms and conditions as the option of the lessor. Permission was given the lessee to sublet such portions of the demised premises as he might not require for his own business. On March 5, 1925, George H. Earle, Jr., conveyed said premises to Harry Vliet, nominee of Arthur W. Pusey. Subsequently, on April 6, 1925, Arthur W. Pusey et ux. conveyed the aforesaid premises to George W. Eavenson, and on the same day George W. Eavenson et ux. reconveyed the same premises to Arthur W. Pusey. Before reconveying the property to Pusey, George W. Eavenson created the mortgage upon which the foreclosure pro-

750. DISTRICT AND COUNTY REPORTS. [10 D. & C.]

Camden Safe Deposit and Trust Company, Trustee, v. Eavenson et al.

ceedings in this case were instituted. On Feb. 28, 1927, Grace E. Pusey et al., executors and trustees of the will of Arthur W. Pusey, granted and conveyed said premises to William R. Stanert. On June 26, 1927, the Sheriff of Philadelphia County acknowledged and delivered a deed to the said premises to Harry Vliet. Shortly thereafter, Harry Vliet granted and conveyed the said premises to William R. Stanert, the petitioner.

Arthur W. Pusey's lease of May 24, 1920, to Jennie M. Stern contains the following clause: "15. If the Lessor's principal is Lessee of the demised premises or of the building of which the said premises are a part, then Lessee agrees that Lessee takes possession as sub-tenant and agrees to be bound by the terms, conditions, covenants and agreements of the said principal's tenancy, whatever the same may be, and in case the principal's tenancy shall terminate either by expiration, forfeiture or otherwise, then this lease shall thereupon immediately terminate, and the Lessee hereby agrees thereupon to give immediate possession, and Lessee further agrees to waive, and hereby does waive, any and all claims for damages, or otherwise, by reason of such other terms, conditions, covenants and agreements and their enforcement and for such termination."

The following clause appears in the lease by Jennie M. Stern to Guilford-Bacharach Company: "This lease is made under and subject to all the terms of the lease on said premises bearing even date herewith made between Mastbaum Brothers & Fleisher, Agent, Lessor, and Jennie M. Stern, Lessee, and should that lease be terminated by law, all personal liability of the said Jennie M. Stern under this lease shall thereupon cease and terminate."

It is contended by the petitioner that when Arthur W. Pusey took title to the said premises from George H. Earle, Jr., on or about March 5, 1925, the lease of George H. Earle, Jr., to Arthur W. Pusey, dated May 22, 1920, terminated, and that it having so terminated, the lease of Arthur W. Pusey to Jennie M. Stern, dated May 24, 1920, also came to an end, and in support of this contention invokes the provisions of paragraph 15, above recited. To this petition Jennie M. Stern and the Guilford-Bacharach Company filed separate answers. Eugene Jacobs also filed his answer, together with his disclaimer to title or possession of the premises. The answer of the respondent, Guilford-Bacharach Company, may be considered with the answer of Jennie M. Stern, which latter, in paragraph 6 thereof, sets forth new matter in the nature of an oral contemporaneous agreement between Arthur W. Pusey and Jennie M. Stern, which may be briefly stated as follows:

Prior to May 24, 1920, Guilford's, Inc., had possession of the premises involved in this proceeding as tenant of George H. Earle, Jr., the then owner of the premises, under two leases, one for a term of five years from Jan. 1, 1917, and the other for a term of ten years from Jan. 1, 1921, the latter lease containing an option to Guilford's for an additional term of ten years. That on or before May 22, 1920, George H. Earle, Jr., entered into a lease with Arthur W. Pusey for the same premises, containing an option to buy the said premises conditioned upon securing a cancellation of the leases theretofore made with Guilford's, Inc. That Arthur W. Pusey proposed to Jennie M. Stern that if she procured cancellation of Guilford's leases as of Dec. 31, 1920, he, Pusey, would give her a lease for the store only, located at the northeast corner of Broad Street and Girard Avenue, about twenty feet on Broad Street and about forty-eight feet on Girard Avenue, for the nominal rent of $1 per annum, the rent for the entire term to be paid upon the execution of the lease. That Pusey and his agents, Mastbaum Brothers & Fleisher, further represented to Jennie M. Stern that he would exercise his option to

purchase the property from George H. Earle, Jr., in accordance with the terms of his agreement, and that she then would have a lease direct from him, Pusey, with no liens prior to the said lease other than the then-existing mortgage, etc. That Jennie M. Stern did procure cancellation of the Guilford's leases, as a result of which Pusey gave her a lease for a term of twenty years from Jan. 1, 1921, for the store for the annual rental of $1 per annum, which was paid for the full term upon the execution of the said lease. That thereafter, on Dec. 31, 1920, Guilford's, Inc., terminated its lease, and, on Jan. 1, 1921, the respondent took possession of the said demised premises and continued in possession peaceably thence hitherto. That Pusey and his successors in title have at all times recognized the respondent as a tenant under the said lease and that no demand was ever made for possession until the demand of William R. Stanert.

Jennie M. Stern, the respondent, denies the petitioner's averment of the conclusions of law, to wit, that the lease was terminated on March 5, 1925, by Pusey's acquisition of the title, but avers that her lease continues according to its terms and conditions. There are other admissions and denials in the answer that do not affect the issue in this case. The respondents, Jennie M. Stern and Guilford-Bacharach Company, requested that replication be made to the new matters set forth in their answers, and also prayed for a jury trial upon the issues of fact raised by the pleadings. Petitioner filed replications, to which the respondents entered a rule for judgment upon the whole record. After argument, President Judge Martin filed an opinion entering judgment upon the whole record in favor of the petitioner and against the respondents. Subsequently, the respondents filed a petition for reargument, to which petitioner filed his answer, with a prayer that the court direct judgment upon the whole record in favor of William R. Stanert, petitioner, and against Jennie M. Stern and Guilford-Bacharach Company, Inc., respondents. The rule for judgment upon the whole record disposes of the request for a jury trial. Later, the Philadelphia Company for Guaranteeing Mortgages, trustee, files its petition for leave to appear and argue, alleging that it held a first mortgage on the said premises, created immediately prior to the time of the creation of the mortgage given to the Camden Safe Deposit and Trust Company, trustee, and that the questions of law involved in the issue before the court would be applicable to the issue that will arise in the event that the Philadelphia Company for Guaranteeing Mortgages, trustee, forecloses upon its first mortgage, and it, or any other purchaser of said premises at such foreclosure sale, seeks to recover possession thereof from the said Jennie M. Stern, and that said questions of law are vital to the security and value of the mortgage held by the said company.

With this statement of the essential facts in the record, we have before us the petitioner's contention that the lease of Arthur W. Pusey to Jennie M. Stern, dated May 24, 1920, terminated March 5, 1925, under clause 15, and the respondent's contention that clause 15 of the Pusey-Stern lease is not applicable because

(*a*) There was no merger when Pusey took title.

(*b*) That the Camden Safe Deposit and Trust Company could acquire no higher rights than its mortgagor, Pusey.

(*c*) That the Camden Safe Deposit and Trust Company, when it took its mortgage, was bound, under the law, to inquire and ascertain the facts with respect to the possession of Jennie M. Stern.

(*d*) The acquirement of the fee by Pusey under the circumstances did not destroy the term of Jennie M. Stern.

*(e)* The provisions of the lease between Pusey and Stern do not work a termination of Stern's term on the acquirement of the fee by Pusey.

*(f)* That under the doctrine of *ejusdem generis*, the word "otherwise" in clause 15 must be interpreted in a restricted sense.

All of respondent's contentions turn about the relevancy and construction of clause 15, the relevancy and the admissibility of the alleged oral contemporaneous agreement between Pusey and Stern, and that the acquirement of the fee by Pusey did not destroy the term he had created in favor of Stern. In none of the cases cited by the respondent upon the subject of merger does it appear that the court had before it a clause similar to the one under consideration. The equitable doctrine that a merger is not favored to the prejudice of one having a beneficial interest is not here disputed. The beneficial interest of Jennie M. Stern must appear in the body of the lease. It cannot be injected into it by an oral contemporaneous agreement between her and Pusey, not reduced to writing, as required by the statute of frauds, for reasons here not disclosed and which cannot be considered. The respondent's argument that clause 15 is not applicable because there was no merger is not tenable. The respondent cannot eliminate this clause from serious consideration by the introduction of oral understandings between herself and Pusey. The Camden Safe Deposit and Trust Company might very well have rested its investigation of the right of Stern's possession by an examination of her lease with Pusey. There was nothing in it to put it on notice that it was not the entire agreement between the parties. The effort of the respondent to minimize the value and effect of clause 15 has no legal support. It does not avail to say that it was a printed clause used by the agents to protect their clients (lessors), where such lessors appeared to be tenants rather than owners, nor that its only purpose was to protect the lessor (Pusey) from possible damages resulting from the cancellation of this lease. In a lease for twenty years, where the stated consideration for the whole term is $20, and where, as here, there was no reason for suppressing the real consideration, to wit, the cancellation of the Guilford leases, common prudence would dictate the insertion of the real consideration and a clause safeguarding the beneficial interest of Jennie M. Stern.

The word "otherwise," as used here, had not been given the restricted meaning urged by the respondents. In Com. *v.* Dicker, 195 Pa. 234, the court construed a statute conferring the power to appoint poor directors to fill vacancies caused "by death, resignation or otherwise." The court said: "The word 'otherwise' in the supplement is broad enough to cover vacancies by death and resignation. It also covers vacancies by removal of the incumbent from the district and by failure of a director-elect to assume the duties of his office." It also extended its meaning to vacancies when the term expired and the district failed to elect as provided by the act.

In McCune *v.* Berry, 237 Pa. 572, the statute authorized the county commissioners to rebuild bridges "destroyed by ice, flood or otherwise." The bridge was demolished by an order of the Secretary of War. There the court held: "The word 'otherwise' in the act does not mean some casualty *ejusdem generis* with ice and flood, but means some other greater power that is as effective in destroying the bridge as an extraordinary flood of ice or water would be." See, also, Whelen's Appeal, 70 Pa. 410; Kintzer's Estate, 26 Dist. R. 936.

Under these authorities, the words "or otherwise" are given a meaning broad enough to be interpreted as meaning "in any other way." The general rule of construction that in cases of doubt and uncertainty in the meaning of

a lease, language is to be construed most strongly against the grantor and in favor of the grantee, is invoked in cases of ambiguity: Conneaut Ice Co. v. Quigley, 225 Pa. 605; McClintock v. The Ætna Co., 260 Pa. 191.

There is no ambiguity in the words "expiration, forfeiture or otherwise." The language is clear and precise. The word "otherwise," in Pennsylvania, has been given a meaning not limited or restricted to the scope or connotation of the words preceding it. In this case the only logical interpretation of the word is "in any other manner."

The only remaining question, therefore, is, did the lease terminate?

Martin, P. J., correctly stated the legal effect of acquisition of the fee by Pusey when he said: "When Pusey became the owner of the property, he ceased to be a tenant, and when his lease terminated, under clause 15, the lease made by him to Jennie M. Stern terminated. That she was permitted to remain in possession after the lease terminated did not create a new term superior to the right of the mortgagee or estop the owner of the property from demanding possession."

And now, to wit, July 9, 1928, judgment is entered upon the whole record in favor of petitioner and against the respondents.