## Commonwealth, ex rel., v. Milliken

*J. Dress Pannell*, Deputy Attorney General, for plaintiff.

*Earl V. Compton*, for defendant.

HARGEST, P. J., September 23, 1935.—This case comes before us upon a suggestion for a quo warranto which avers that Cloyd E. Wilson, the relator, was duly appointed and commissioned to fill the vacancy in the office of Sheriff of the County of Dauphin caused by the death on August 22, 1935, of George N. Barnes, the sheriff then serving under an election; that after having given bond and filed his commission in the office of the recorder of deeds in this county, he took the oath of office and thereupon demanded that Howard E. Milliken, the coroner, turn over the said office to him, which the said coroner refused to do. The return admits all of the pertinent

facts, but denies that the Governor has the right to appoint since the passage of The General County Law of May 2, 1929, P. L. 1278, and avers that the coroner has the right to hold the office until another sheriff is elected and commissioned. A demurrer was filed to this return.

The precise question before us is whether The General County Law of 1929 has changed the law, and the practice thereunder, providing "for the appointment of a sheriff, in case of death, by the executive authority," which has existed in the Colony of Pennsylvania and in the Commonwealth since the Act of January 12, 1705, 2 Pa. Stat. at L. 272.

The Colonial Act of 1705 provides for the election by the freemen of twice the number to be chosen for both sheriff and coroner, who shall be presented to the Governor, who shall "commissionate" one of them, and also provides:

"But in case the persons elected for sheriff shall refuse to accept of the office, or if, after any sheriff doth accept, he shall be convicted for misbehavior in his office, or shall depart this life before the end of the term for which he is or shall be chosen, then another sufficient person shall be commissionated by the governor from time to time to supply the place of such as shall so refuse, misbehave himself, or be deceased as aforesaid; who shall act and continue in the office of sheriff to the end of the said term of one year from the time he was commissionate, or until another be as aforesaid chosen in his stead."

Down to the Constitution of 1838, two persons were chosen for each of the offices of sheriff and coroner, one of whom was appointed and commissioned by the Governor, so that not only the power to fill vacancies but the power of original selection, as between "the two persons presented to him", rested with the Governor.

Section 31 of the Constitution of 1776 provided for the election of sheriffs and coroners for the term of three

years. Section 4 of the Act of September 29, 1789, 13 Pa. Stat. at L. 368, provided:

"That if any sheriff . . . shall be legally removed from his office or happen to die before the expiration of the term, . . . the coroner of the proper county shall execute the office of sheriff and all things thereunto appertaining until another sheriff shall be duly commissioned and notice thereof given as aforesaid, and the security and pledges given by every coroner in pursuance of this act shall be a security to the commonwealth and to all persons whatsoever for the faithful discharge and due performance of all the duties as well in and by this act [required] as by any other or former laws required from any such coroner and coroners."

It will be noted that the vacancy caused by refusal to accept the office, found in the Act of 1705, was not included in the Constitution of 1776, and was not restored until the Act of 1842, hereinafter referred to, and then only as to the office of coroner. The office of sheriff being lucrative and the office of coroner not, in those early days, perhaps as a practical matter no elected sheriff ever refused. The Act of 1705 was repealed.

The Constitution of 1790 provides in article VI, sec. 1, as to sheriffs and coroners:

"Two persons shall be chosen for each office, one of whom, for each respectively, shall be appointed by the governor. . . . Vacancies in either of the said offices, shall be filled by a new appointment, to be made by the governor, to continue until the next general election and until a successor shall be chosen and qualified as aforesaid."

Section 7 of the Act of March 28, 1803, 4 Sm. L. 45, provides:

"That if any Sheriff . . . shall be legally removed from his office, or die before the expiration of the term for which he shall have been commissioned, the coroner of the proper county shall execute the office of Sheriff . . . until another Sheriff shall be duly commissioned

. . . and the security and pledges given by every Coroner in pursuance of this act, shall be a security to the commonwealth, and to all persons whomsoever for the faithful discharge and due performance of all the duties required by law from such Coroner."

It would therefore seem that when the coroner, under this act, took over the office of sheriff, he did it qua coroner, and not as sheriff.

Next came the Act of April 15, 1834, P. L. 537, "Relating to counties and townships and county and township officers", which provided for the issuing and recording of the commissions of sheriffs and coroners, and provided, in section 75:

"If any sheriff shall be legally removed from his office, or shall die before the expiration of the term for which he shall have been commissioned, the coroner of the same county shall execute the office of sheriff, and perform all things thereunto appertaining, until another sheriff shall be duly commissioned, and notice thereof given to such coroner."

It will be noticed the word "appointed" is left out of this section because the appointment was otherwise provided for in the Constitution of 1790, and this section has been carried into section 204 of The General County Law of May 2, 1929, P. L. 1278, almost verbatim, the provision of vacancy by resignation being inserted.

Section 76 of the Act of 1834 provides that when a vacancy happens in the office of sheriff or coroner, which is filled by a new appointment, the new appointee must enter into the recognizance and bond in the manner prescribed by law. It will be noted, however, when the coroner took charge, his bond as coroner was to cover his acts temporarily performed as sheriff. So this section contemplated a new appointment to supersede the coroner.

Then follows the Constitution of 1838, which provides in article VI, sec. 1, for the election of one person each to

the office of sheriff and coroner, "who shall be commissioned by the Governor." And it also provides,

"Vacancies in either of the said offices shall be filled by an appointment, to be made by the governor, to continue until the next general election, and until a successor shall be chosen and qualified as aforesaid."

The contingency of a vacancy by refusal to accept the office, found originally in the Act of 1705 but not thereafter found in the Constitution or the laws after the repeal of the Act of 1705, was supplied by section 11 of the Act of April 5, 1842, P. L. 230, providing that if there should be such refusal for three months after election, "The said office shall be treated as vacant, and it shall be the duty of the Governor to appoint and commission some suitable person to fill such vacancy". This provision found in the Act of 1842 was evidently inserted because in the event of refusal to accept the office there was no means of determining the vacancy. This provision is carried into section 205 of the Act of 1929.

We now come to the Constitution of 1874, which, after providing in article IV, sec. 8, that the Governor shall have power to fill vacancies in certain enumerated offices, continues, "or in any other elective office which he is or may be authorized to fill", and, as the section is now amended, if such vacancy occurs in an elective office more than two months prior to an election day, it should be filled at such election.

It will be noted that the last sentence of section 1 of article VI of the Constitution of 1838, which specifically provided that a vacancy in the office of sheriff or coroner should be filled by appointment of the Governor, is omitted from the Constitution of 1874, and the reason for that omission is apparent. In article XIV, sec. 2, of the Constitution of 1874, relating to county offices, it is provided: "all vacancies not otherwise provided for, shall be filled in such manner as may be provided by law." And in section 8 of article IV, just above quoted, the Governor is authorized to fill any vacancy in any other elective

office "which he is or may be authorized to fill". What does this language mean? Clearly, that where the Governor, at the time of the adoption of the Constitution, was by law authorized to fill a vacancy in an elective office, his authority so to do was continued. Not only that, but it safeguards to him the right to fill such vacancy if any law subsequently so provides, and instead of referring to the sheriff and coroner specifically, as the Constitution of 1838 did, the provision of article XIV, sec. 2, authorizes the Governor generally to fill all vacancies in county offices in the manner which may be provided by law.

The Constitution of 1874 was carried into effect by the Act of May 15, 1874, P. L. 205, which provided:

"That in case of a vacancy happening by death, resignation or otherwise, in any office created by the constitution or laws of this commonwealth, and where provision is not already made by said constitution and laws to fill said vacancy, it shall be the duty of the governor to appoint a suitable person to fill such office".

It seems, therefore, to be too plain for extended argument that, the Constitution having generally given the Governor the power to fill vacancies in any case in which he was at the time of its adoption authorized by law to fill them, or in which he may thereafter be authorized to fill them, if any statute so authorizes him, the authority cannot be successfully challenged. The Act of 1874 promptly supplied that authority, and section 60 of The General County Law of 1929, almost in totidem verbis, reënacted the Act of 1874 authorizing the Governor in any case of any vacancy, not otherwise provided for by the Constitution or the provisions of that act, to fill the vacancy in a county office.

This resume shows that there is little left of the argument so vigorously urged upon us that because the word "appointed" is omitted in section 190 which was added to The General County Law, by section 6 of the Act of June 9, 1931, P. L. 401, referring to vacancies caused by removal from office or death of the coroner, and in sec-

tion 204 with reference to the same character of vacancy in the office of sheriff, while in section 205, it is provided where the vacancy occurs because of neglect or refusal to assume the duties, "it shall be the duty of the Governor to appoint and commission", the legislature intended to take away from the Governor the right to appoint in the first two instances.

As has already been pointed out, section 204 reënacted almost exactly section 75 of the Act of 1834, and section 205 reënacts the Act of 1842 above referred to. Even if there were nothing else in the statute, it would be difficult to see why the legislature should provide for appointment where the vacancy occurs for failure to accept the office of coroner only but intend that the coroner shall act as sheriff until a successor is elected where the vacancy occurs by death or removal. We think it would take more than the mere failure to include the word "appoint" in the two sections to show that there was a legislative intention to bring about such an anomalous situation. Counsel for the relator cites to us the case of Lindenmuth v. Commonwealth (No. 1), 312 Pa. 350, to the effect that we must give force and effect to every part of the statute. That is precisely what the construction we place upon the Act of 1929 does and what the interpretation of the respondent fails to do. Section 60 provides generally for filling of vacancies. It cannot be given adequate force and effect if the proposition urged by the respondent's counsel were enforced. It is apparent that in framing The General County Law these sections of the former acts were included verbatim, without perhaps noticing, in drafting section 205, that the appointment was otherwise provided for in section 60. In the conclusion which we reach, we do give effect to every part of the act, and double effect to the word "appoint" in section 205.

In Commonwealth, ex rel., v. King, 85 Pa. 103, a situation arose which was very similar to the present situation. In that case, the sheriff, whose term would otherwise have expired January 1, 1876, and whose successor

was to be voted for at the general election November 2, 1875, died on October 14, 1875. The relator was appointed on October 25, 1875. The respondent was elected at the election and claimed the office. The relator claimed that his appointment entitled him to the office until January 1, 1877. It was held:

"The right of appointment of the governor, to fill a vacancy in a county office, under the 8th section of the 4th article of the constitution, extends only to the period between the death, resignation or removal of the incumbent and the beginning of the new term by regular succession."

In that case, the court below, coming to its conclusion, declared that under the Act of May 15, 1874, P. L. 205, and the sections of the Constitution above referred to, the Governor's appointee was entitled to hold the office only until January 1, 1876.

Counsel for the present respondent very vigorously contended that there was nothing in this case to indicate that the Governor had any right of appointment. We cannot agree with his interpretation. It is very apparent that while no specific authority of appointment was given in article IV, sec. 8, or in article XIV, sec. 2, of the Constitution, the Supreme Court must have relied upon the Act of 1874 as the court below did. The Supreme Court says of the opinion of the court below that it is "a very full and satisfactory discussion of the question in this case." The Supreme Court said, inter alia:

"It is manifest, therefore, that the vacancy referred to in this section is one occurring in an existing term by death, removal, resignation or other cause, which prevents the existing term being carried to its regular period of expiration. The appointment to fill this vacancy, or intermediate period between the death and the period of the expiration, necessarily follows the nature of the vacancy. . . . It follows from this major requirement of the constitution, that the term vacancy used in the 8th section of the 4th article, conferring power on the gov-

ernor to fill vacancies, must have the same interpreta-
tion, so far as it relates to the office of sheriff".

And referring to the Act of 1874, the court said:

"That act, therefore, must have the same interpreta-
tion, and the right of appointment of the governor to fill
a vacancy extends only to the period between the death
of the incumbent and the beginning of the new term by
regular succession, under the provisions of the 2d section
of the 14th article of the new constitution."

So that it is plain to us that the Supreme Court came
to the conclusion that the Act of 1874, which Judge Wil-
liams in that case said was passed to carry the Consti-
tution into effect, provided for the filling of a vacancy by
appointment of the Governor.

From the earliest Colonial statute of 1705 down to and
including The General County Law of 1929, the sheriff
and coroner were always required to have a commission,
whether elected or appointed to fill a vacancy. That may
be some reason why the words "commission" and "com-
missions" were retained in sections 190, 204, and 205 of
The General County Law, to fix the time when the sheriff
or coroner could enter upon his duties, rather than to
take away from the Governor the power of appointment
to a vacancy which theretofore existed.

It is a settled principle of statutory construction, that
some weight should be given to contemporary interpreta-
tion: Commonwealth, ex rel., v. Paine, 207 Pa. 45, 48;
Price v. Lancaster County, 189 Pa. 95, 98; Common-
wealth v. Quaker City Cab Co., 287 Pa. 161; and the
courts will attach no slight significance to the uniform
practice continued for a considerable time under an am-
biguous statute: Commonwealth v. Mann et al., 168 Pa.
290; Garr et al. v. Fuls et al., 286 Pa. 137. It is not
contended, even by the respondent, that there was any-
thing ambiguous about the law prior to 1929. That being
so, the legislature understood that the Governor ap-
pointed a sheriff and coroner in case of a vacancy. It
would hardly be conceived that the legislature intended

to effect such a drastic change in the system which had existed from the early days of the Colony by merely leaving out the word "appoint" in sections 190 and 204 of The General County Law of 1929, particularly when the power had already been inserted in section 60. Such a change could only be made by a clear expression of the legislative intention.

From what we have said, we think it is clear that the Governor had the power to fill the vacancy in the office of sheriff caused by the death of George N. Barnes, and we accordingly made the decree entered September 18, 1935.                    From Homer L. Kreider, Harrisburg.