## Kearcher, Appellant, *v.* Mt. Oliver Borough Council.

Argued September 27, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Wilbur F. Galbraith,* with him *Charles D. Coll* and *Prichard, Lawler, Malone & Geltz,* for appellant.

*Charles G. Notari,* with him *Lee P. Heid,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, November 14, 1949:

Under the Act of Assembly approved the 21st day of May, 1943, P. L. 492,[1] 53 PS Sec. 351.28, providing

---

[1] Providing for the temporary appointment of policemen in boroughs, incorporated towns and townships of the first class, for a

for the temporary appointment of policemen in boroughs, for a limited period, without conferring civil service status upon the appointees, the appellant was appointed a temporary policeman for Mt. Oliver Borough by its Council on June 21, 1944. On December 11, 1946, he was notified of his discharge by the Borough Council, and his employment was terminated on January 1, 1947. He protested his discharge and 14 months later brought this action of mandamus for reinstatement and pay from January 1, 1947. The case came to trial upon an agreed statement of facts and was adjudicated by the trial judge, on findings of fact and conclusions of law, in favor of the Borough. Upon exceptions the adjudication was sustained by the court en banc. This appeal followed.

The agreed statements of facts show, inter alia, that the Borough of Mt. Oliver "had a police force of more than three members, and in making appointments to said force, the Borough Council is governed by the Civil

---

limited period, without conferring civil service status upon the appointees.

Whereas, temporary emergency exists by reason of the entry of policemen into the armed forces of the United States, and the practical impossibility of obtaining substitutes within the standards fixed under present civil service laws and regulations established thereunder, therefore

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1. That the councils of boroughs, incorporated towns and the township commissioners of townships of the first class, may fill vacancies or add to the police force during the duration of the war and six months thereafter, without regard to the requirements of any civil service act, such appointments to terminate six months after the end of the war, or sooner, if the men displaced are available and request reinstatement (in which case they shall be so reinstated) for duty, and shall confer no civil service status upon the appointees.

Nothing in this act shall nullify or disturb the civil service status conferred upon police officers appointed prior to the passage of this act through the operation of the act, approved the fifth day of June, one thousand nine hundred forty-one (Pamphlet Laws, eighty-four).

Service Act of May 4, 1927, P. L. 519, and its supplements"; that the Act of 1943, P. L. 492, relaxed civil service requirements for the duration of the war emergency; that one police officer of the borough joined the armed forces of the United States and one was granted a leave of absence to engage in government work and both had civil service status, and a full quota could not be maintained by appointments under the civil service regulations and so the Council resolved that a war emergency existed in the Borough; that the Council by motion suspended the civil service regulations under the Civil Service Law for Boroughs; that the appellant, Kearcher, upon his application for a position as temporary police officer was appointed to fill the vacancy due to the resignation of Albert Beckman, also a temporary officer, the latter being appointed to fill the vacancy caused by the officer who joined the armed forces.

It is further shown that on December 12, 1945, the officer, Fox, who had joined the armed forces and had been discharged, requested reinstatement and was reappointed as of December 16, 1945. There still existed vacancies due to suspensions and resignations so that Kearcher's services were continued. On August 14, 1946, the Council by motion discontinued the war time regulations pertaining to police requirements and authorized the civil service commission to hold an examination in accordance with the Commonwealth's requirements, and pursuant to this on November 13, 1946, the members of the Commission made a report that Civil Service examinations were held on October 18, 1946, and that eight candidates successfully passed the examinations. From the list of names of the successful candidates submitted, Council, in accordance with the regulations prescribed by the Civil Service Act, made appointments to the police force of the Borough, and at the same meeting by motion they retained Kearcher as a temporary officer until such time as Elmer E. Davis,

police officer with civil service status, who was recovering from an illness, would return to police duty, which was fixed for January 1, 1947; for in the meantime Davis applied for reinstatement. Kearcher refused to accept this temporary appointment and notified Council "that his tenure as such would not expire during the duration of the war and six months thereafter, that he could report for duty and was ready and willing to continue his services". (18th Agreed Statement of Fact.)

Upon these facts the trial judge and the court below correctly concluded that the appellant was properly dismissed, and that the Act of May 21, 1943, P. L. 492, defined no tenure of office for a temporary policeman of a borough and that he could be appointed and dismissed at the will of the Council.

Judge PATTERSON, speaking for the court below, well said: "The purpose of the Act of May 21, 1943, was only to protect those police officers who might be called to the armed forces in their jobs and their civil service status and to enable the borough authorities to fill such jobs without processing them through civil service channels. It was limited to police officers only and did not in any sense abandon, negate or suspend civil service. It provided an alternative to meet a possible emergency. To give it any further effect would be to open the road to a contravention of civil service laws by artifice or subterfuge. In interpreting a statute it must be construed as an integral part of the whole structure affected and not as a separate matter having an independent meaning of its own. Heaney v. Mauch Chunk, 322 Pa. 487; West v. Lysle, 302 Pa. 147, 150."

In construing the applicable Act we must endeavor to determine the legislature's intention. This statute was obviously intended as a temporary measure under the emergency then existing by reason of the war, and was not intended to supplant or repeal any of the civil

service legislation on the subject, for the Act expressly conferred "no civil service status upon the appointees".

This Act authorized borough councils within the Commonwealth if they found an emergency existed to fill vacancies and to add to the police force, but in doing so it limited the tenure of such appointments. Within the limitations of that tenure Council had the full power of appointment "without regard to the requirements of any civil service act", but it did not limit Council's power to make appointments for any shorter period, or to exercise its inherent right of removal. An act that fixes the term of an office is merely an act designed to bring the terms of the officer named therein to an end after the expiration of the stipulated term. Its purpose clearly is not to grant an unconditional term of office. It is an act of limitation not of grant. See *Parsons v. United States,* 167 U. S. 324. Here the legislature intended to limit the term for which Council could make an appointment not to grant to the officer an unconditional term of service. It did not intend to declare that the power of removal is no longer incidental to the power of appointment.

In *Commonwealth v. Lindsay,* 330 Pa. 120, 123, 198 A. 635, this Court said: ". . . It is a tenet of good government that except in those cases where the public welfare requires that an official charged with important governmental functions should be protected against interference on the part of the executive and in those cases where special classes of public servants, such as policemen and firemen, are placed under civil service protection, the power of removal is correlative with the power of appointment." This appellant as a temporary policeman was not within the protected exceptions just named.

Under the Act the plaintiff's tenure of office ceased on December 16, 1945. The court below properly found "When John J. Fox, a former police officer, with civil

service status, returned from service in the armed forces and asked the borough council for reinstatement, the tenure of plaintiff as a police officer under the Act of 1943 ceased. . . . Fox had entered the service. Beckman was appointed to take his place under the Act of 1943. Beckman resigned before Fox returned. Plaintiff was appointed to fill the vacancy. Therefore, plaintiff's situation was as though he had been the original appointee to serve for Fox while the latter was in the service."

Fox returned and on December 12, 1945, requested reinstatement as of December 16, 1945. It was the duty of Borough Council to grant the request. The Act of Assembly in referring to such an appointment as that of the plaintiff declares: ". . . such appointments to terminate six months after the end of the war, or sooner, if the men displaced are available and request reinstatement (in which case they shall be so reinstated). . . ."

The order of the court below is affirmed.