## Insurance Commissioner v. Yelen

*John A. Skelton,* for Insurance Commissioner.

*David Yelen, Ralph Johnston* and *Roy B. Pope, of Johnston & Pope,* for appellant.

KREIDER, J., January 11, 1954.—This is an appeal from an adjudication of the Insurance Commissioner of Pennsylvania revoking the "public adjuster" license issued for the year 1952 to Morris Yelen, appellant. A petition for supersedeas was granted and the revocation was thereby suspended pending the disposition of the appeal.

The commissioner, by letter dated March 3, 1952, charged appellant (1) "with engaging in, being interested in and receiving profits from salvage and similar business in matters wherein you acted as a public adjuster, in violation of section 3 of the Act of April 25, 1921,[1] P. L. 276, as amended" (40 PS §303) and, (2) with violating the condition and restriction of the public adjuster's license issued March 29, 1948, which provided that "the licensee will not participate in the repair or replacement of any loss caused by fire where the licensee is handling the adjustment. . . ."

The testimony taken at a hearing before a representative of the Insurance Commissioner discloses that on November 6, 1948, a fire occurred in a dwelling house owned by Anna Krapta and Anthony Krapta, her husband, in Wilkes-Barre, Pa. This fire caused partial damage to the house and also damage to personal property therein.

The property, both real and personal, was insured by the Milwaukee Mechanics Insurance Company which employed the General Adjustment Bureau, Inc., to adjust the loss. On the evening of the day of the fire appellant, Morris Yelen, a public adjuster, came to the home of Mr. and Mrs. Krapta and obtained from them a contract in writing pursuant to the terms of the statute regulating public adjusting, which empowered him to represent them in the settlement of the loss.

On November 17, 1948, appellant and the Kraptas entered into a contract by which appellant agreed to perform for a contract price of $2,000 the repair and

---

[1] The Public Adjusters' Law was enacted in 1921, supra. The provision forbidding the holder of a public adjuster's license to "engage or be interested in or receive any profit from, any salvage or similar business" first appeared in the Act of April 26, 1929, P. L. 807, which was amended by the Act of June 22, 1931, P. L. 605, 40 PS §303.

rebuilding work required on the Krapta house, as set forth in certain specifications which were prepared at that time. This contract was made by the appellant in the name of the "Barry Construction Company", which is wholly owned by him.

Thereafter, appellant received a check from the Milwaukee Mechanics Insurance Company in the sum of $3,367.45, which was endorsed by the Kraptas and deposited by appellant. The labor and materials for the completion of the work covered by the specifications and certain other extra work amounted to $2,547. To this appellant added his fee of $673.49 for adjusting the fire loss and deducted the total, $3,220.49, from the amount received from the insurance company. He thereupon tendered to the Kraptas a check for the balance of $146.96, which has been refused.[2]

Appellant contends (1) that section 3 of the Act of April 25, 1921, P. L. 276, as amended, 40 PS §303, does not prohibit a duly licensed public adjuster who has entered into a contract with the assured to represent him in the adjustment of a fire loss from making another contract with the assured to repair and rebuild his damaged property, and (2) that the restriction placed on appellant's license on March 29, 1948, is unlawful and void because the Insurance Commissioner has neither the power nor the authority to issue a public adjuster's license with special personal restrictions placed on the use and enjoyment of such license.

Section 3 of the Act of April 25, 1921, P. L. 276, as amended, 40 PS §303, provides, in part, as follows:

---

[2] Appellant in his brief states that "litigation over this contract for work completed was started by the Kraptas in the Court of Common Pleas of Luzerne County on September 19, 1951, although the complaint was verified on February 5, 1950. An order was made directing the plaintiffs in that case to file an amended complaint on January 21, 1952, but such amended complaint has not been filed to this day and the Kraptas have made no effort to put the case at issue and bring the case to trial".

"The Insurance Commissioner shall issue adjusters' licenses and adjuster solicitors' licenses to persons, partnerships, associations, or corporations applying therefor whom he deems to be trustworthy and competent to transact business as *public adjusters* and public adjuster solicitors, respectively, in such manner as to safeguard the interests of the public; but no license shall be issued to any person, partnership, association, or corporation engaged or interested in, or receiving any profit from, nor shall the holder of any such license engage or *be interested in*, or *receive any profit from, any salvage* or *similar business*." (Italics supplied.)

Appellant, as stated, was the sole owner of the Barry Construction Company and entered into a contract with the Kraptas to repair and rebuild the damaged property. Does the repairing and rebuilding of damaged property fall within the statute which forbids a public adjuster to "be interested in or receive any profit from *any salvage or similar business*"?

Neither party has cited any judicial precedents, and our research has failed to disclosed any cases deciding this question. Therefore, the determination of the scope of the phrase "any salvage or similar business" is a question of statutory interpretation.

The prohibition against a public adjuster receiving a profit or being interested in "any salvage or similar business" was added to the Act of 1921, supra, by section 3 of the Act of April 26, 1929, P. L. 807, 40 PS §303. Concerning the origin and purpose of this provision, counsel for the Insurance Commissioner states in his brief:

"Research . . . has uncovered no clarifying records of legislative committees or of any other groups, to shed light upon the intention of the 1929 legislature. The answer must be found in the wording of the statute itself."

The object of all interpretations and construction of laws is to ascertain and effectuate the intention of the legislature when the act was passed. To give effect to that intention, but first to ascertain what it is, is the task given to the courts. See the Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551; Kearcher v. Mt. Oliver Borough Council, 363 Pa. 148, 151 (1949); Panik v. Didra, 370 Pa. 488, 493 (1952). Section 33 of the Statutory Construction Act, supra, provides:

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; . . ."

Webster's New International Dictionary, 2nd ed., 1952, defines "salvage" thus:

"That which is saved from destruction in a wreck, a fire, or the like; now, often, that which is extracted from wreckage, ruins, rubbish, or the like, as valuable or having further usefulness; . . ."

It is generally understood in the insurance business that the term "salvage" or "salvage business" refers to dealing with property which has been declared to be practically a total loss or has been damaged to such an extent as to lose its identity as the specific kind of property of which it was representative prior to the damage. However, there may remain parts of the damaged property which are of some value or usefulness. The "salvage business" is the buying and selling of portions of such damaged property for any price or value that can be obtained. It is the method employed by insurance companies to minimize their losses as much as possible. We believe this to be what the legislature had in mind when the amendment to the Act of 1921, supra, was passed in 1929, prohibiting public adjusters from being interested in or receiving a profit from "any salvage or similar business."

In the instant case appellant made a contract with the Kraptas to repair and rebuild the dwelling house. He neither purchased from the insurance company nor did the Kraptas assign to him any "salvage" materials. It may be true, as the Insurance Commissioner contends, that in the course of the repairs several pieces of the partly burned remains may have been utilized to rebuild the dwelling house. However, we feel that is not enough evidence to warrant a finding that appellant was engaged in the salvage business or a business similar thereto. Nor can we hold that a public adjuster who contracts with clients to repair and rebuild damaged property as a building contractor is engaged in "any salvage or similar business". The erection and repair of buildings is not a "salvage business".

It appears from the record that on or about January 12, 1948, the Insurance Commissioner refused to renew appellant's license for reasons not set forth in this proceeding. In February 1948, an appeal was filed in this court from that refusal. Subsequent thereto, but prior to the disposition of the appeal, negotiations between appellant's counsel and the Deputy Insurance Commissioner resulted in an agreement whereby appellant accepted a license with the following restriction placed thereon:

"March 29, 1948, this license is issued with the understanding that the licensee will not participate in the repair or replacement of any loss caused by fire where the licensee is handling the adjustment, and is subject to revocation if it is definitely established that the issuance of license is contrary to Section #3, Act of April 25, 1921, P. L. 276 (as amended by Act of June 22, 1931, P. L. 605)."

An administrative agency cannot impose a restriction which is not consistent with its statutory licensing authority. Statutory laws which are clear and pre-

cisely definitive of the power granted to the administrative official must be strictly followed, and cannot be enlarged at will.

In Holgate Bros. Co. et al. v. Bashore et al., 331 Pa. 255, 260 (1938) it is stated:

"The legislature may, however, leave to administrative officers, boards and commissions, the duty to determine whether the facts exist to which the law is itself restricted. In all such occasions, nevertheless, the legislative body must surround such authority with definite standards, policies and limitations to which such administrative officers, boards or commissions, must strictly adhere and by which they are strictly governed. . . ."

And in Fed. Deposit Insurance Corp. v. Board of Finance and Revenue, 368 Pa. 463, 472 (1951) the Supreme Court said:

"An administrative body cannot, by mere usage, invest itself with authority or powers not fairly or properly within the legislative grant; it is the law which is to govern rather than departmental opinions in regard to it; . . ."

See also Commonwealth v. A. M. Byers Company, 346 Pa. 555, 560 (1943), wherein it is said:

". . . No administrative officer or body, exercising discretion conferred by the legislature, is vested with the power to abrogate the statute law of the Commonwealth, or to grant to individuals an exemption from the general operation of the law. . . ."

In the light of the foregoing decisions as applied to the facts in this case, we feel that the restriction placed on appellant's license on March 29, 1948, was a nullity because there appears to be no statutory authority which permits restricted licenses to be issued under the circumstances here present. In reaching this conclusion, however, we are not to be understood as criti-

cizing the action taken by the Insurance Commissioner in his administrative capacity. In fact, we think the commissioner is to be commended for his vigilance in taking steps to eliminate any possible unfair practices that appeared to him to have arisen in this case. He found as a fact from the evidence that "the respondent (appellant) is an astute business man who took every precaution to protect himself from his clients by requiring a partial assignment to secure his fee in adjusting the fire loss, by including confessions of judgments in the alleged contract for repair and remodeling of the damaged premises and by retention of the sum received in settlement of the fire loss until the alleged repairs and remodeling were completed." The commissioner also noted that appellant "took every precaution to protect himself in his dealings with the Kraptas but the record is devoid of any evidence that he did anything to safeguard them from himself or that he defined his obligations to them" and that appellant's application for renewal of his license had been refused twice heretofore. It may be, therefore, that in view of these circumstances the commissioner's apprehensions were not without foundation and that the existing statutory law should be clarified and strengthened by the legislature.

The courts, however, are required to apply the law as it now stands to the evidence adduced in this case. Consequently we are obliged to hold that the legislature did not intend to include the business of repairing and rebuilding damaged property by public claim adjusters within the meaning of the term "any salvage or similar business", as used in the Act of 1929, supra, and that the insertion of a special personal restriction on the use and enjoyment of the public adjuster's license issued to appellant on March 29, 1948, was void.

Accordingly, we are constrained to enter the following

*Order*

And now, January 11, 1954, the appeal is sustained. The order of the Insurance Commissioner of the Commonwealth of Pennsylvania is revoked and judgment is hereby entered in favor of appellant, Morris Yelen. The prothonotary is directed to notify the parties or their counsel forthwith of the entry of this order.